[Crim. No. 908. First Appellate District, Division Two.—October 16, 1920.]

THE PEOPLE, Respondent, v. ALBERT KAUFMAN, Appellant.

[1] STATUTES — CONSTRUCTION AND CONSTITUTIONALITY OF — SCOPE OF APPLICATION.—The constitutionality and ·construction of a statute are matters of law, neither depending upon the facts of any particular case; and if the legislative enactment is violative of no constitutional guaranty, it is necessarily applicable to all cases within its scope.

[2] ID.—CONSTITUTIONAL CONSTRUCTION OF.—A statute will neither be applied nor construed to render it obnoxious to the constitution, if this result may be avoided by any reasonable interpretation of its language.

[3] MOTOR VEHICLE ACT—PURPOSE AND INTENT OF SECTION 21.—Section 21 of the Motor Vehicle Act, which provides that whenever an automobile collides with any vehicle containing a person, the driver of such an automobile shall immediately cause such automobile to stop and shall render to the occupants of the vehicle collided with all necessary assistance, including the carrying of any such occupant to a physician or surgeon, if such treatment is required, or if such carrying is requested by any occupant of the vehicle struck, was designed to prohibit, under pain of severe punishment, negligent or wanton drivers of motor-cars from seeking to evade civil or criminal prosecution by escape before their identity could be established, and similarly to prohibit all drivers, whether negligent or not, from leaving persons injured in collisions with cars driven by them, in distress and danger for want of proper medical or surgical treatment, but that section was not designed to be used as a club to exact monetary settlement for injuries either to persons or property.

[4] ID.—COLLISION WITHOUT INJURY—EFFECT OF DEMAND FOR ASSISTANCE IN BAD FAITH.—One of two automobile drivers who may have been equally negligent in bringing about a collision in which neither was injured, by first demanding that he be carried to a hospital or surgeon, could not, under section 21 of the Motor Vehicle Act, by the expedition of his demand put the stamp of felony upon the other who might refuse the request made in the terms of the statute but made in bad faith.

[5] ID.—CAUSE OF INJURIES — CROSS-EXAMINATION OF COMPLAINING WITNESS—NEW TRIAL.—On this prosecution for a violation of section 21 of the Motor Vehicle Act, the state having failed to show any essential element of criminality on the part of the defendant and, notwithstanding the credibility of the complaining witness was somewhat shaken, the defendant not having been permitted to cross-examine such witness as to the details of a quarrel which he had with his son shortly before the accident and as to the injuries thus received, the defendant's motion for a new trial should have been granted, where the affidavits produced thereon showed that at least a part of the injuries which the complaining witness testified he received as a result of the collision with defendant's automobile were in fact received in the quarrel and scuffle with his son.

APPEAL from a judgment of the Superior Court of Alameda County. J. J. Trabucco, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Louis Glickman for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

BRITTAIN, J.—On an information charging him with felony for violation of section 21 of the Motor Vehicle Act (Stats. 1915, p. 408), the defendant was tried, found guilty by the jury, and sentenced to pay a fine of one hundred dollars, or in default of the payment to be confined in the Alameda County jail for a period of one day for each two dollars of the fine imposed. His motion for a new trial, supported by affidavits regarding newly discovered evidence, was denied. On this appeal he contends the evidence was insufficient to sustain the conviction; that the court erred in limiting cross-examination of the complaining witness, and that the motion for a new trial should have been granted. Incidentally, he maintains that section 21 of the Vehicle Act should not be so strictly construed against one accused of felony as to make it applicable to the facts of this case, and that if it is to receive strict construction, it is violative of certain constitutional guaranties.

[1] The constitutionality and construction of a statute are matters of law. Neither depends upon the facts of any particular case. If the legislative enactment is violative of no constitutional guaranty, it is necessarily applicable to all cases within its scope. If the scope of the act is determined generally, it becomes the duty of courts to determine whether or not particular cases are within the purview of the statute. [2] A statute will neither be applied nor construed to render it obnoxious to the constitution, if this result may be avoided by any reasonable interpretation of its language. The constitutionality of section 21 of the Motor Vehicle Act was upheld in a case where it was attacked on grounds closely akin to those relied upon by the appellant. (*People* v. *Diller,* 24 Cal. App. 799, [142 Pac. 797].) The contention in this case is that if the section requires the driver of a motor-car which has collided with another to take anyone who was riding in the other car to a surgeon, upon the mere request of such person, regardless

of whether the person making the request is in need of the care of a physician or not, and makes refusal to do so idle a thing punishable as a felony, the statute cannot be upheld. In the present case, at least, no such construction need be placed upon the act. The question of constitutionality is not involved and it is unnecessary in this case even to analyze the able decision in *People* v. *Diller.*

[3] Section 21 of the Vehicle Act, in so far as it is at all pertinent to the facts of this case, provides that "whenever an automobile . . . collides with any vehicle containing a person, the driver of . . . such an automobile . . . shall immediately cause such automobile . . . to stop and shall render . . . to the occupants of the vehicle collided with, all necessary assistance, including the carrying of such . . . occupant to a physician or surgeon for medical or surgical treatment, if such treatment is required, or if such carrying is requested by . . . any occupant of the vehicle struck." It further provides that the driver shall give the number of the automobile and the names of the persons in it. Any violation of any of these provisions is in terms made punishable by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding one year, or by fine not exceeding five thousand dollars, or both such fine and imprisonment.

The purpose and propriety of the act are apparent. It was designed to prohibit, under pain of severe punishment, negligent or wanton drivers of motor-cars from seeking to evade civil or criminal prosecution by escape before their identity could be established, and similarly to prohibit all drivers, whether negligent or not, from leaving persons injured in collisions with cars driven by them, in distress and danger for want of proper medical or surgical treatment. It was not designed to be used as a club to exact monetary settlement for injuries either to persons or property. [4] One of two automobile drivers who may have been equally negligent in bringing about a collision in which neither driver was injured, by first demanding that he be carried to a hospital or surgeon, could not by the expedition of his demand put the stamp of felony upon the other who might refuse the request made in the terms of the statute but made in bad faith.

In the present case the complaining witness was driving alone. With the appellant, in the car he was driving, were four other persons. If none of them was hurt or required medical or surgical treatment, any one of the five in the appellant's car might first have asked the complaining witness for transportation to a surgeon, and he might have been accused of felony if he had said "there is no reason why I should provide transportation for you." Upon no reasonable hypotheses can the criminality of either of two actors be made to depend entirely upon which of the two shall first make a request of the other. Every statute must receive reasonable construction, and this is particularly true of statutes defining crimes. "It is to be remembered that the letter of a penal statute is not of controlling force, and that the courts in construing such statutes, from very ancient times have sought for the essence and spirit of the law and decided in accordance with them, even against express language; and in so doing they have not found it necessary to overthrow the law, but have made it applicable to the class of persons or the kind of acts clearly contemplated within its scope." (*Ex parte Lorenzen,* 128 Cal. 431, [79 Am. St. Rep. 47, 50 L. R. A. 55, 61 Pac. 68].) "General terms should be so limited in their application as not to lead to injustice or oppression or an absurd consequence." (*People* v. *Earl,* 19 Cal. App. 69–72, [124 Pac. 887, 888]; *United States* v. *Kirby,* 7 Wall. (U. S.) 482, [19 L. Ed. 278, see, also, Rose's U. S. Notes].)

Shortly after 6 o'clock on the evening of January 3, 1920, the appellant, driving a touring car, in which were his wife and three of his employees, turned his car across east Twelfth Street, in Oakland, near its junction with Lake Shore Avenue. While the rear wheels of his car were still in or close to the car tracks in the center of the street, the Ford car, driven by the complaining witness, who was alone, crashed into the front of the car driven by the appellant. Both cars stopped and both drivers alighted. There was an altercation between them concerning which was at fault, the complaining witness asserting that the appellant had improperly driven his car across the street, and the appellant claiming that the complaining witness had been driving at a dangerous and excessive rate of speed but for which the collision would have been avoided. A number of per-

sons collected at the scene of the accident, among them a
fellow-employee of the complaining witness, who was driving
his own car and who a little later took the complaining
witness from the scene of the accident. During the alter-
cation the complaining witness walked to the rear of the car
of the ·appellant, ostensibly to get its number, when the ap-
pellant said to him, "That is unnecessary," and at the
same time handed the complaining witness his business card.
The length of the conversation was placed by various wit-
nesses at from eight to ten or fifteen minutes. The com-
plaining witness gave several versions of what was said
during the conversation. He was described by the ap-
pellant and by those in the car with him as being violent
and boisterous in manner, and in one of the versions of his
conversation he testified, "As I said a while ago, I asked
Mr. Kaufman to take me to the receiving hospital; that
was no place to argue; that I was hurt and he said, 'I will
not.' Then I said, 'You are in the wrong; you are on the
wrong side of the street.' I said, 'You ought to be ar-
rested,' and with that he said, 'Who are you?' and he was
in a very fighty mood, I suppose because I struck his car,
and I kind of stepped back and I said, 'I am a deputy
sheriff,' and I flashed a badge." The words, "I suppose
because I struck his car," on motion were stricken out. The
complaining witness was employed as a collector for a water
company and had been given a badge as a deputy sheriff,
although he was not paid as such. He stated that when he
showed his badge, the appellant said, "I don't care for your
badge, and if you are the sheriff of this county, I wouldn't
care for you either." The appellant then re-entered his
own car and drove away. The front axle of the appellant's
car was bent, and the radiator and fenders were crushed.
He was able to drive the car but had great difficulty in
steering it. The car of the complaining witness was badly
injured and was pushed aside but left with the lights
lit. The complaining witness was then taken by his co-
employee in his car to the receiving hospital. This was
Saturday night. The complaining witness had no further
medical attention until after he called on the appellant at his
place of business on Monday afternoon. As to what oc-
curred at that time the complaining witness testified, "As
I entered the store, Mr. Kaufman looked at me and I had

my face all bandaged up, and he says, 'Oh, you are the man that hit my car Saturday night.' I said, 'Very naturally,' and I says, 'I hit your machine when you cut the corner at night.' I says, 'I didn't see you coming,' and I says, 'the least thing you could do was to take me to the hospital.' 'Oh,' he says, 'you were not hurt.' 'Well,' I says, 'I was hurt and I am still hurt and badly hurt.' I don't know what else took place. Anyway, he said something and I says, "Well, I ain't going to argue with you at all, Mr. Kaufman.' I did say, 'What are we going to do about it?' or 'What are you going to do about it?' something like that, and he said, 'There is nothing to be done. You were wrong; you were driving forty-five miles an hour,' and as he said that I walked out.'' Being asked if he did not tell the appellant something about having him arrested, he replied, ''I did say—when he said he wasn't going to do anything about it, I says, 'I am.' '' Again, being asked if he had not said anything about having the appellant arrested, he replied, ''Not that I remember.'' His attention being called to his evidence given at the preliminary examination, it was stipulated that he then testified that when he visited the appellant's store he asked the appellant what he intended to do about his car, ''I said, 'The least you can do is to fix the car.' I said to him, 'You know you were in the wrong.' '' He was then asked if that was all that was said, and he replied on the preliminary examination, ''Well, he said he would not ask me anything for his damages, that I could pay my own, that I would never get a cent out of him, and I told him I would proceed.''

The animus of the complaining witness had no bearing on the trial of the case, except upon the question of his credibility. He testified he was thrown across the steering wheel of the car by the collision and was ''knocked out,'' as he expressed it, for several minutes. Further, that his face struck the stanchion of the car and was cut. It was bleeding during the altercation, which took place immediately after the accident. There was no attempt on the part of the appellant to hide his identity, and he and those with him testified that the complaining witness did not ask to be taken to the hospital. The conviction of the appellant rests solely upon the acceptance by the jury of the version of the complaining witness that he made this request and their

understanding of the instructions of the court in regard to the provisions of section 21 of the Motor Vehicle Act. There is no attack upon the instructions. Section 21 of the act was read to the jury, and apparently no request was made or instruction asked in any way limiting its language to the effect that if the occupant of the motor-car in a collision asks and is refused transportation to a physician or surgeon, the driver refusing the request is guilty of a felony.

[5] On cross-examination the complaining witness was asked if shortly before the collision he had not had a quarrel and scuffle with his son in which his face was scratched. He sought to avoid interrogation upon this subject, and counsel for the appellant was not permitted to question him in regard to the details of that quarrel. In view of the entire character of the evidence given by the complaining witness, it appears that cross-examination upon that subject would have been proper as a means of testing the credibility of his statement in regard to his injuries, and incidentally his credibility regarding the entire matter. The error, however, would be inconsiderable if on the entire record it appeared justice had been done, but this does not appear.

The physician, to whom the complaining witness went after his visit to the store of the appellant, testified that at that time his face was cut and the portion of his trunk near the lower ribs appeared to be sore to the touch and was slightly discolored as from a bruise. He frankly admitted that except from the statements made to him by the complaining witness, he had no means of knowing how the injuries were caused. On the motion for a new trial the affidavits of the wife and son of the complaining witness were presented, together with the affidavits of persons in whose presence these affidavits were made. In substance the affidavits covered the same facts. From that of the son of the complaining witness it appears that between 4:50 and 5:15 o'clock in the afternoon of the day of the collision, the complaining witness left his son's house in Oakland, and that a few minutes before the complaining witness and his son were in a struggle and scuffle; that at that time the complaining witness threatened his son, who, in order to avoid being struck and injured by the complaining wit-

49 Cal. App.—37

ness, was compelled to wrestle with him and to hold his hands; that during the scuffle the complaining witness struck his head against the corner of the building, causing a gash from which the blood flowed freely; that when the complaining witness left his house the blood was actually flowing freely from the gash then cut, and that the complaining witness was then bruised, injured and was in pain. It appeared further that the struggle was so violent and the complaining witness treated his son so roughly that the sleeve of the son's coat was completely torn out. When he left his house the complaining witness was in a most highly excited, fighting and threatening mood. In view of these statements and the effect they would have had upon the question of the credibility of the complaining witness, particularly in the matter of how he received his injuries, and in view of the palpable attempt to collect money from the appellant prior to any suggestion of arrest on this felony charge, this court is of the opinion that the motion for a new trial should have been granted. Upon retrial the jury should be instructed in regard to the proper limitations to be placed upon the express language of the highly penal statute upon which this prosecution is based. The judgment is reversed and a new trial ordered.

Langdon, P. J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 3, 1920, and the following opinion then rendered thereon:

THE COURT.—In denying the petition for rehearing filed on behalf of the people in this case it is proper to state that a re-examination of the record fails to disclose any divergence between the evidence and the statements in the original opinion. It is strongly urged that the decision is at variance with the salutary rules against granting new trials *solely* on the ground of newly discovered evidence directed solely to the impeachment of a witness, or *solely* for the purpose of contradicting him. These rules are fully established and ought to be maintained. There is nothing in the original opinion in conflict with them. The construction and application of the motor vehicle act were properly before this court. In the trial of the case it was

rigidly applied to a case perhaps within its letter, but wholly outside its spirit. This court interpreted the law. The state failed to show any essential element of criminality on the part of the defendant. The remarks of the trial court about the immateriality of the details of the quarrel between the prosecuting witness and his son, it was claimed, prevented the defendant from fully cross-examining the prosecuting witness upon the vital question of whether or not he was injured in the collision. On motion for new trial, affidavits before the court tended to show that the injuries of which the prosecuting witness complained were received during a brutal fight with his son shortly before and were in no way connected with the collision. Under all these circumstances, the exercise of sound judicial discretion demanded that a new trial be granted to the end that unless a crime had been committed the brand of a conviction of felony should not be stamped upon defendant to disgrace him and the members of his family in later years.

Rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 13, 1920.

Angellotti, C. J., Shaw, J., Lennon, J., Olney, J., and Sloane, J., concurred.

Lawlor, J., and Melvin, J., dissented.