[Crim. No. 1049. Fourth Dist. Feb. 7, 1956.]

THE PEOPLE, Respondent, v. ARTHUR VERNON KUHN, Appellant.

Sankary & Weathers and Bruce Weathers for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant was convicted by the court, sitting without a jury, of the crime of violating Vehicle Code, section 480 (failure to perform duties of the driver of a vehicle involved in a traffic accident injuring another person). A motion for new trial was denied. The appeal is based on the question of the fairness of the trial, the sufficiency of the evidence to support the verdict, and the claim that the findings were contrary to law.

About 11:45 p. m. on April 23d, one O'Rourke, a pedestrian 6 feet 4 inches tall and 64 years of age, dressed in a light gray jacket and light blue trousers, was injured while walking northerly along the western asphalt shoulder of Highway 101, being a six-lane "rock coat" highway differing in color from the shoulder and unilluminated by any artificial light, at a point one-fourth of a mile north of the business district of Del Mar. The zone speed limit was 55 miles per hour and there were no sidewalks along the roadway. O'Rourke was struck by a 1950 Ford vehicle driven by defendant. Before the accident the Ford was observed by a driver following in the same southerly direction on Highway 101 about one mile north of Del Mar. He testified the Ford car was then being driven "somewhat erratically," crossing

into the various lanes at about 45 miles per hour, and that after it rounded a curve just before the accident it pulled over to the outside westerly lane of traffic and hit a man walking in a northerly direction on the west shoulder. He testified he could see all this from the headlights of the Ford car in front of him; that about that time the Ford "veered to the right" out of the normal lane of traffic onto the asphalt shoulder and then veered back into the west lane of traffic and the pedestrian was turning a somersault about the level of the top of the Ford; that the Ford proceeded about one-fourth mile farther on to the first intersection in Del Mar and stopped; that he drove up to the Ford car, pointed back to the injured man, and then moved across to the gas station and told the attendant of the accident; that about that time the Ford started forward and continued on south without returning to the place of the accident; that the attendant and others followed the Ford and took its license number; and that he returned to the injured man lying in the road. This Ford was subsequently stopped by the officer in San Diego and defendant was driving it. There was one girl friend in the front seat with defendant and a boy and girl in the back seat. The driver was questioned as to where he had been and if he had hit any object on the road while driving from Los Angeles. He said: "Yes—near Del Mar"; that he thought it was a guard rail or post, and the reason he knew it happened was because he felt the "front—it felt like the spring broke"; that he stopped the car, looked at the front and said he noticed a scratch in his right front fender that he had not seen before, but that he saw nothing unusual so they got in the car and went on.

The police officer testified he saw a few beer cans in the car and thought the party had been drinking, but defendant passed the sobriety test and he smelled no alcohol on his breath; and that when defendant was stopped he was going at a normal rate of speed. Matching paint color taken from the right front fender of the Ford was found on the injured man's trousers. "Dimples" or dents in the metal, and fabric burns were located on the right front fender and there was a slight fabric burn up on the right front of the hood, as indicated by photographs in evidence.

Defendant testified that the four of them were going to Tijuana. He said his Ford was scraped by a driver near Huntington Beach that evening and caused the marks indi-

cated; that at Del Mar he felt a bump or jar and stopped at the intersection, got out, looked at the right front spring; and that a man then pulled up and pointed at him, but he thought nothing of it and then proceeded on at a slow speed and was subsequently stopped by the officers.

Other occupants of defendant's car testified the Ford struck something but they thought it was a chuckhole and that they had broken a spring. They admitted drinking some of the beer, but testified defendant drank none.

It is the claim of the defendant that there was not sufficient evidence to support the court's finding that defendant had knowledge of the fact that he had struck and injured any person. It is more probable that the impact was not a light one; that not only did the right front fender and hood strike the pedestrian, but that the bumper also was involved in the impact, judging from the nature of the injury inflicted on the pedestrian, i. e., a fracture and laceration between the knee and the ankle. The evidence of the path of the injured man's body and particularly of the uplifted somersaulting body, renders it unlikely that the defendant was ignorant of the object which he hit. ▪ There was sufficient evidence to support the court's finding that the defendant's automobile violently struck a pedestrian, throwing him into the air, that these facts were known to defendant at the time, and that he deliberately refrained from attempting to aid the injured pedestrian.

▪ The legislative purpose in enacting section 480 of the Vehicle Code was to prevent the driver of the offending car from leaving the scene of the accident without furnishing information as to his identity and without rendering the necessary aid to the injured person. (*People* v. *Scofield,* 203 Cal. 703, 708 [265 P. 914]; *People* v. *Kaufman,* 49 Cal. App. 570, 573 [193 P. 953].)

▪ It is true that knowledge on the part of the accused of an infliction of injury upon another person is an essential element of the offense. From the nature of the case such knowledge on the part of the driver, although a necessary element of the offense, must usually be proved by showing the surrounding facts and circumstances which indicate such a knowledge. (*People* v. *Pahner,* 10. Cal.App.2d 294, 297 [51 P.2d 1143]; *People* v. *Dallas,* 42 Cal.App.2d 596 [109 P.2d 409].) ▪ It is not to be always concluded that because the defendant disclaims he was aware he struck and injured another person he lacked such knowledge. (*People*

v. *Henry,* 23 Cal.App.2d 155, 159 [72 P.2d 915].) The question of knowledge was a factual question for the determination of the trial court. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

■ The next argument is that certain remarks of the trial judge indicated he did not consider knowledge a necessary element. There is some unnecessary language which might indicate this to be true, such as:

". . . I don't care how the mark got on the car. The only thing I am interested in is whether or not he hit this victim here, and I'd like to conclude the testimony by 4:30 so let's cut it short."

(Statement by counsel for defendant): "You would have knowledge of the accident, Your Honor, but the defendant is charged here to the effect he had an accident, that he injured a human being, and then, with knowledge thereof, he drove away from the scene.

"THE COURT: He had knowledge of everything excepting it was a human being, and the reason he didn't find out about that is because he didn't go back and look. (By Counsel): That is the very element we are concerned about."

However, the court did thereafter emphasize the fact that knowledge was a necessary element, and when all the remarks related thereafter were considered as a whole, it is clear that he understood the law in this respect.

It is next contended that the trial judge became prejudiced against the defendant and his passenger witnesses during the trial and prejudged the case to the extent that it influenced his findings. The conclusion is based upon some comments made by the judge while he was cross-examining defendant's passenger witnesses in reference to the beer they said they drank en route, and the colloquy between the judge and defendant's counsel on the motion for new trial.

In speaking of the beer that was being carried in their car the judge asked a passenger witness: "Aren't the cocktail bars thick enough that you have to carry it in the car?" Thereafter, in summarizing the evidence the judge made some suggestive remarks in reference to the defendant and his front-seat passenger which would better have been left unsaid, but since it was a trial without a jury it does not appear that prejudicial error resulted. The trial judge did endeavor to expedite the trial by indicating, after two or three witnesses testified for defendant, that he did not desire to hear further evidence pertaining to a claimed scraping collision defendant

had with his car and that of a Marine near Huntington Beach. There is no real basis for the claim that the court had prejudged the guilt of defendant by limiting the production of cumulative evidence. (*People* v. *Marvin*, 48 Cal.App.2d 180, 198 [119 P.2d 413].) The evidence fully supports the conclusion reached by the trial court that the defendant was guilty of the crime, as charged.

Judgment and order affirmed.

Barnard, P. J., and Mussell, J., concurred.