[Crim. No. 30125. Second Dist., Div. Five. Mar. 15, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
WALTER HENRY WOLF, Defendant and Appellant.

**COUNSEL**

Albert C. S. Ramsey and Edward P. George, Jr., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—Defendant was convicted of felony hit and run, a violation of Vehicle Code section 20001.[1] At the time of sentencing, the trial court reduced the conviction to a misdemeanor by imposing a sentence of 365 days in the county jail, suspended, three years probation and a fine of $5,000.

On appeal three contentions are presented:

(1) "Whether [defendant] had knowledge of the fact that he injured a human being on the night in question, January 27, 1976, as required by section 20001 of the Vehicle Code?"

---

[1]Vehicle Code section 20001 reads:
"The driver of any vehicle involved in an accident resulting in injury to any person, other than himself, or death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004."

(2) "Whether the court committed prejudicial error in failing to grant [defendant's] motion to suppress certain physical evidence and statements of the accused, pursuant to Penal Code section 1538.5, and section 402(b) of the Evidence Code?"

(3) "Whether the levy of a $5,000.00 fine for a misdemeanor conviction was statutorily improper?"

Defendant, a medical doctor, owned a 1973 four-door, gold, Mercedes-Benz, and as of January 27, 1976, it was free from damage and meticulously maintained.

There is no question but that the evidence supports the finding that the car came into contact with a human and that injuries resulted. The question is whether defendant knew he had struck a person and thereafter failed to stop. (*People* v. *Holford*, 63 Cal.2d 74, 79 [45 Cal.Rptr. 167, 403 P.2d 423].)

The injuries to the person struck included a sore left shoulder, bruised and scratched left hand, possible fracture of the left knee cap and general soreness over most of the body. The impact propelled the victim off her feet and against a dirtbank, prone, on her side. A mood ring, which had been worn by the victim, had been removed by the impact and the stone found at the scene. Four packages of party invitations which had been encased in a white paper bag and carried by the victim were found at the scene. Tire marks from the left wheels of the car involved extended 108 feet along the dirt portion of the divider and progressed in an arc from the paved road onto the divider, then back again onto the roadway. The car was damaged by a broken turn signal plastic lens, a dent in the headlight, an indentation on the hood, an indentation in the chrome at the windshield, a cracked windshield at the left door post, a missing lens to the outside rear view mirror on the left side and clothing brush marks on the left front door.

The impact of car against person was described by the victim's companion as similar to modeling clay hitting a table and that it "was a fairly loud noise." Defendant described the sound as a crack.

Defendant testified that he had attended two operations as anesthetist on January 27, and had done some work on his boat at the marina the day of the accident in question and was driving home in the hour of dusk to dark. Driving a route well known to him, he traveled

about 50 miles per hour. His windows were shut and the radio moderately on and he was tuning it when there was a sharp crack on the left side of his car. Defendant instinctively ducked, then on looking up observed a three-inch diameter crack in his windshield with spokes radiating out. Defendant testified that he looked in his rear view mirror and everything was black and concluded that a rock had hit the automobile. He proceeded home without stopping, arriving some five minutes later. Defendant did not examine the extent of damage to his car until the following morning. The defendant did, however, have his wife casually look at the damage and stated someone had struck him with a rock. The police were not called.

Continuing, he stated that the following morning a detailed examination of the damage was made and while it was observed to be more extensive than he had believed, he asserts that he continued to conclude it was from rock damage; and, that after talking to his insurance agent, he took his car to a repair shop. While there he was arrested.

Further, the evidence justifies an inference that defendant sought unusually prompt repair to the car and that he was irritated by delay.

"Q. Mr. Gentile [employee of repair shop], while you were doing this estimate after the conversation with Doctor Wolf, what was Doctor Wolf doing?

"A. To put it in my term, he would look—he looked like an expectant father. He was just pacing back and forth quite anxiously. He was very upset with me, because I was taking so long doing the job. And, in fact, he even followed me into the parts room a couple of times to get some parts for his car."

It was for the trial court to weigh the evidence to ascertain whether it was reasonable to believe that an impact such as in this case could have occurred without the driver's knowledge. While the injuries in the instant case, fortunately, are not as severe as those reported in *People* v. *Libhart,* 79 Cal.App. 291, 293 [249 P.2d 211], the language therein used is equally appropriate here: ". . . The man who was struck was thrown with such force as to seriously injure him and render him unconscious, and it is highly improbable that the defendant did not know that he struck the man. The evidence is amply sufficient to sustain the judgment." In *People* v. *Kuhn,* 139 Cal.App.2d 109, at pages 112-113 [292 P.2d 964], the court recognized the difficulty of proof of knowledge;

there it said: "It is true that knowledge on the part of the accused of an infliction of injury upon another person is an essential element of the offense. From the nature of the case such knowledge on the part of the driver, although a necessary element of the offense, must usually be proved by showing the surrounding facts and circumstances which indicate such a knowledge. (*People* v. *Pahner,* 10 Cal.App.2d 294, 297 [51 P.2d 1143]; *People* v. *Dallas,* 42 Cal.App.2d 596 [109 P.2d 409].) It is not to be always concluded that because the defendant disclaims he was aware he struck and injured another person he lacked such knowledge. (*People* v. *Henry,* 23 Cal.App.2d 155, 159 [72 P.2d 915].) The question of knowledge was a factual question for the determination of the trial court. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)"

After recognizing the holding in *Kuhn, supra,* the court in *Holford, supra,* 63 Cal.2d at page 80, stated: "Usually, however, such knowledge must be derived from the surrounding facts and circumstances of the accident. (E.g., *People* v. *Kuhn, supra,* at p. 112.) Yet the driver who leaves the scene of the accident seldom possesses actual knowledge of injury; by leaving the scene he forecloses any opportunity to acquire such actual knowledge. Hence a requirement of actual knowledge of injury would realistically render the statute useless. We therefore believe that criminal liability attaches to a driver who knowingly leaves the scene of an accident if he actually knew of the injury or if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person." (Fn. omitted.) (Cf. *Garabedian* v. *Superior Court,* 59 Cal.2d 124, 127 [28 Cal.Rptr. 318, 378 P.2d 590].)

Defendant knew that his car struck some object (he contends a rock) and that the striking caused immediately recognizable damage to the car (the broken windshield which he observed, and the missing outside mirror had he sought to use it). The issue, then, is only whether he knew the impact was with a person. The type of damage to the car, the sound of the impact (as described by the prosecution witness) and the fact that defendant was at that moment driving partially off the roadway and that he was driving with his lights on support the conclusion that he knew a person was involved. In addition to the physical evidence inferably establishing that the body of the victim contacted the very front of the car, extended over the fender in a manner to dent the hood and break the windshield then strike the mirror and brush the door, there is testimony that the lights from the car would have illuminated the area so as to make an object discernible. Considering all of these facts we cannot say that the evidence does not support the finding of the trial court of

knowledge. The fact of "knowledge" was established both as to the impact being between a human and the car and that it was of such a nature as to result in physical injury to the person.

Defendant's second contention, error in failing to suppress certain evidence, is likewise without merit.

■ The vehicle itself was properly impounded and *"searched."* We italicize "search" for in fact there was no search in the legal sense. Certain items of trim were removed from the car for convenience of detailed examination; however, their pertinence to the crime herein involved was at all times in plain sight. There is no prohibition in seizing open and obvious evidence of a crime. (*People* v. *Sirhan,* 7 Cal.3d 710, 742 [102 Cal.Rptr. 385, 497 P.2d 1121].) Certainly, it cannot be said that the defendant's car, from the moment of first observation by the officers, was not reasonably believed to be the one involved in the hit and run. *North* v. *Superior Court,* 8 Cal.3d 301, 305 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155], citing *People* v. *Teale,* 70 Cal.2d 497 [75 Cal.Rptr. 172, 450 P.2d 564], adequately answers this portion of defendant's contention: "First, we noted that the automobile itself was properly seized following defendant's arrest 'as evidence connecting defendant with the alleged crimes' and that 'it is plainly within the realm of police investigation to subject objects properly seized to scientific testing and examination [citation] . . . .' (70 Cal.2d at p. 508.) Next, we explained that the cases had already acknowledged the implication that 'when the police lawfully seize a car which is itself *evidence* of a crime rather than merely a container of incriminating articles, they may postpone searching it until arrival at a time and place in which the examination can be performed in accordance with sound scientific procedures.' [Citations omitted.]" Defendant argues that *Coolidge* v. *New Hampshire,* 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022], mandates a different result. We do not agree. The evidence inculpating the car was observed before any police detention occurred and the observations were made under a plain sight circumstance that was not the case in *Coolidge.*

■ Should any of the statements made by defendant in answer to police questioning have been suppressed as violative of defendant's *"Miranda"* rights? No.[2]

---

[2]The court denied defendant's motion to suppress statements by defendant except "Q. Leaving the estates? A. Yes." (The reporter's transcript shows the question to be "Coming out of the Estates?") This question and answer was suppressed and we consider only the remaining questioned responses.

Defendant had voluntarily taken his car to a repair shop. While there the police were informed that the vehicle which they sought as the instrument of the crime was at that shop, as well as its owner. The police requested the shop personnel to "Try to delay the vehicle, because we're on our way." Prior to this request,[3] defendant had told the shop "estimator" for damage repair that the person requesting repairs was Dr. Wolf (defendant) and that "He was driving home and hit something. He did not know what it was. . . . It was dark. Kept on going. He just kept on driving home." Because of the dark, he didn't know what it was. Defendant also stated that he had been driving on "Palos Verdes Drive. I don't know if it was Palos Verdes Drive North. He said it (the damage occurred) was on the way home from work."

Upon arrival at the repair shop the police observed the car and its damage and "felt pretty sure" that this was the car which had been involved despite the fact that its color did not match the color description given by the victim and her friend. The officer then needed to determine whether that vehicle was being driven the night before on Palos Verdes Drive West in a southerly direction and who the driver was. The officer contacted the service manager and was told the owner's name and where he was. The officer conversed with defendant to ascertain who had possession of the car "so that I could impound it." At that time, the officer had no knowledge as to who the driver of the car was on the night of the accident. The officer asked, "Are you Mr. Wolf?" and defendant answered, "No. I'm Dr. Wolf." The officer then had the following conversation with defendant: "Q. Well, then, Dr. Wolf, I have reason to believe that this vehicle was involved in a felony hit-and-run last night." Defendant answered: "That car wasn't involved in a felony hit-and-run last night. I thought someone was throwing rocks at me." The officer asked "Where" and defendant said, ". . . on Palos Verdes Drive West, last night."[4] The *Miranda* warning was then read to defendant.

It is defendant's contention that it was error not to suppress the above conversation. He bases this contention on his testimony as to the directive given to him by the shop manager and the testimony of a different officer who used the term "detain" rather than "delay" as above set forth. The statement attributed to the shop manager was: ". . . the

---

[3]The defendant and car were at the repair shop some 15 to 20 minutes before the police called and made the request.

[4]The question and answer suppressed followed. (See fn. 2.)

sheriff was on his way to pick me up and I was to remain there." Defendant allegedly interprets this comment to mean that he could not leave but had to wait for the police to arrive.

We stated the applicable principles of law in *In re James M.,* 72 Cal.App.3d 133, at pages 136-137 [139 Cal.Rptr. 902].[5]

While the defendant testified he believed that he was not free to go, the trier of fact was under no requirement to believe him. Here the circumstances were such that it was most reasonable to conclude that the investigation had not begun to focus on defendant. The delaying tactics by the repair personnel did not constitute restraint even if they had told defendant that the sheriff was on his way. Even after the investigators arrived and the car was believed to be the one involved in the accident, defendant was not under suspicion. It was only after his comments, in response to the most primary investigatory inquiries, which provided reasonable cause to believe that defendant had been the driver at the time of the hit and run. If defendant felt he was not free to leave prior to the giving of the *Miranda* warning, such belief was born of a sense of guilt and not from anything done or said by the investigators or the repair personnel. In such a situation, the rule of *People* v. *Arnold,* 66 Cal.2d 438 [58 Cal.Rptr. 115, 426 P.2d 515], is inapplicable. Promptly upon the "focus" being centered upon defendant, he was given his *Miranda* rights and, upon his request to talk to his lawyer, no further inquiry by police took place.

[5]"It may well be that the officers did not believe that they had effected an arrest, but that is immaterial. 'The "custodial" element of the accusatory stage when the right to counsel attaches does not depend on the interrogator's subjective intent; "custody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived." ' (*People* v. *White* (1968) 69 Cal.2d 751, 760 [72 Cal.Rptr. 873, 446 P.2d 993], quoting from *People* v. *Arnold* (1967) 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515].) Further, under *Miranda* the vital question is custody, not whether the investigation has focused on the person interrogated (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 444, fn. 4 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *People* v. *Herdan* (1974) 42 Cal.App.3d 300, 307, fn. 10 [116 Cal.Rptr. 641]; *People* v. *Hubbard* (1970) 9 Cal.App.3d 827, 834 [88 Cal.Rptr. 411]), and it is immaterial that the questioning relates to a crime other than the one which triggered the custody and is investigatory as far as that offense is concerned. (*Mathis* v. *United States* (1968) 391 U.S. 1, 4-5 [20 L.Ed.2d 381, 384-385, 88 S.Ct. 1503]; *People* v. *Woodberry* (1968) 265 Cal.App.2d 351, 354-357 [71 Cal.Rptr. 165].)

"We recognize that a detention not amounting to an arrest does not trigger the need for *Miranda* warnings. (*People* v. *Manis* (1969) 268 Cal.App.2d 653, 663-669 [74 Cal.Rptr. 423].) Nevertheless, as *Manis* recognizes, a detention for investigation ripens into an arrest, requiring *Miranda* warnings, as soon as probable cause to arrest has been established. (*Id.* at p. 670. See generally *People* v. *Herdan, supra,* 42 Cal.App.3d 300, 306, fn. 8; *People* v. *Wright* (1969) 273 Cal.App.2d 325, 333 [78 Cal.Rptr. 75]; *People* v. *Ceccone* (1968) 260 Cal.App.2d 886, 892-893 [67 Cal.Rptr. 499].)" (Fn. omitted.)

■ Defendant's final contention is that the amount of the fine, $5,000, exceeds the permissible limit for a misdemeanor. We disagree.

Section 20001 of the Vehicle Code provides, in applicable part, as follows: ". . . Any person failing to comply with the requirements of this section under such circumstances is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison for not less than one year nor more than five years or in the county jail for not to exceed one year or by fine of not to exceed five thousand dollars ($5,000) or by both."[6]

Thus, the section specifies a fine in the amount of $5,000. It is true that section 19 of the Penal Code provides: "Except in cases where a different punishment is prescribed by any law of this State, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding six months, or by fine not exceeding five hundred dollars, or by both," and section 672 of the Penal Code provides as follows: "Upon a conviction for any crime punishable by imprisonment in any jail or prison, in relation to which no fine is herein prescribed, the court may impose a fine on the offender not exceeding five hundred dollars ($500) in cases of misdemeanors or five thousand dollars ($5,000) in cases of felonies, in addition to the imprisonment prescribed."

The defendant would have the latter section read as providing a prohibition upon a misdemeanor fine in excess of $500. It does not so limit the amount of a prescribed fine.

We see no reason why the Legislature could not provide that the maximum fine which could be imposed for a violation of section 20001 of the Vehicle Code would be the same whether the crime be designated felony or misdemeanor; we believe that is what was done.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

---

[6]Section 20001 was amended by statutes 1976, chapter 1139, section 337, page 5171, operative July 1, 1977.