Filed 9/8/23  P v. Alejandro CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061118 |
| v. | (Super. Ct. No. 17NF1221) |
| DANIEL ALEJANDRO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Elizabeth G. Macias, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Eric A. Swenson, Felicity Senoski and Michael Patty, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Daniel Alejandro of hit and run with injury (Veh. Code, § 20001, subd. (a); count 1)), misdemeanor resisting and obstructing an officer (Pen. Code, § 148, subd. (a)(1); count 2),[1] driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a); count 3), and driving with a blood alcohol concentration of 0.08 percent or more causing injury (Veh. Code, § 23153, subd. (b); count 4). The court suspended imposition of sentence on counts 1, 2, and 3, placed defendant on formal probation for three years with certain terms and conditions, and stayed sentence on count 4 pursuant to section 654. The court also imposed fines and fees.

On appeal, defendant contends the evidence was insufficient to support his conviction on counts 1 and 2. He also argues this court should independently review the court's *Pitchess* ruling with respect to two officers' records.[2] We disagree with defendant's contentions, but we agree the court failed to conduct an adequate *Pitchess* review. We accordingly conditionally reverse the judgment and remand to the court with directions to hold a new *Pitchess* hearing. In all other respects the judgment is affirmed.

FACTS

On March 19, 2017, at around 7:00 a.m., T.K. and her then-boyfriend, R.P., were driving in separate vehicles close to one another in the City of Fullerton. They each had the other's child in their vehicles. As they drove through an intersection, defendant's vehicle traveled between them and hit the right side of T.K.'s vehicle. T.K. and R.P. attempted to pull over, but defendant did not stop. T.K. and R.P. then followed defendant's vehicle. When defendant stopped at a red light, R.P. got out of his vehicle,

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).)

approached defendant's vehicle, and banged on the driver's side window to get defendant's attention. R.P. noticed defendant looked "kind of dazed" and there was a passenger in the front seat and another passenger laying across the back seat. Defendant did not look at R.P. and drove away when the light turned green. Before he drove away, T.K. took a picture of the license plate on defendant's vehicle and called the police. The police asked if she needed paramedics, and she said, "'No, I think we are fine.'"

When police arrived, T.K. and R.P. provided a description of defendant and his license plate number. Officer Song then initiated a hit-and-run investigation and found defendant's vehicle in a 15-minute parking zone near his apartment. The hood of the vehicle was warm, and there was collision damage on the left side of the car. The driver's side window was slightly open, and the trunk was unlatched. Based on this information, Officer Song believed the driver was in a hurry to get home to get his property and "leave town."

Officer Song waited for backup, and when Officer Sepulveda arrived, they went to defendant's apartment, knocked on the door, and announced their presence.[3] The officers heard voices and movement in the apartment and saw smoke under the door. The officers announced they knew defendant was inside and urged him to open the door.

After a few minutes, defendant eventually opened the door and was in his underwear. The officers noticed another person was inside the apartment. Officer Song also noticed defendant smelled like alcohol. He told defendant to come outside, but defendant did not comply so Officer Song placed his hand on defendant and pulled him out of the apartment and onto the ground outside of the apartment door. Defendant resisted while the officers placed him in handcuffs. He generally was uncooperative and asked to put on shorts. Because there was someone else inside the apartment, the officers

---

[3] A video recording from the officer's body worn camera was played for the jury. We summarize some facts from a transcript of the video recording.

3

offered to retrieve the shorts for defendant. Defendant told the officers they were not welcome in his house, called them vulgar names, and uttered obscenities.

R.P. arrived at the apartment and identified defendant as the driver of the vehicle that hit T.K.'s vehicle. The officers then transported defendant to jail. At 10:37 a.m., defendant's blood was tested twice at the police station and indicated blood alcohol concentrations of 0.144 percent and 0.142 percent. Extrapolating back to the time of the accident, defendant's blood alcohol concentration would have been between 0.19 percent to 0.20 percent.

At trial, T.K. testified she experienced pain so she visited a doctor the day after the accident. She received treatment for her injuries and was still receiving treatment at the time of trial.

Among other things, Officer Song testified he believed there was imminent danger to life and property given the smoke coming from under defendant's door. He also testified he believed defendant was using stall tactics to lower his blood alcohol content.

DISCUSSION

Defendant contends the evidence was insufficient to support his conviction on counts 1 and 2. With respect to his conviction for obstructing a police officer (count 2), he emphasizes the police officers had to have been acting lawfully before he could be convicted. He argues the police did not act lawfully because his warrantless arrest was not justified by exigent circumstances. With respect to his conviction for hit and run with injury (count 1), defendant claims the evidence was insufficient to establish he had knowledge the accident caused injury to another person. Finally, defendant seeks independent review of the court's *Pitchess* ruling. For the reasons discussed *infra*, we agree the court failed to conduct an adequate *Pitchess* review, but we reject defendant's remaining contentions.

4

*Substantial Evidence Supporting Defendant's Conviction for Obstructing a Police Officer*

A. Applicable Law and Standard of Review

As noted, *ante*, the jury convicted defendant of misdemeanor resisting and obstructing an officer (§ 148, subd. (a)(1).) Section 148, subdivision (a)(1) states: "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment" is guilty of a misdemeanor. The elements of that crime are as follows: "'"'(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties."'"'" (*Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 894-895.) "Before a person can be convicted of [a violation of section 148, subdivision (a)(1),] there must be proof beyond a reasonable doubt that the officer was acting lawfully at the time the offense against him was committed." (*In re Joseph F.* (2000) 85 Cal.App.4th 975, 982.) "'Under California law, an officer is not lawfully performing [his or] her duties when [he or] she detains an individual without reasonable suspicion or arrests an individual without probable cause.'" (*In re Chase C.* (2015) 243 Cal.App.4th 107, 114, italics omitted.)

The Fourth Amendment to the United States Constitution prohibits a police officer from making a warrantless and nonconsensual entry into a person's home to make an arrest, and such an arrest is "presumptively unreasonable." (*Payton v. New York* (1980) 445 U.S. 573, 576, 586.) To make a lawful nonconsensual entry into a home for a warrantless arrest, there must be both probable cause and exigent circumstances. (*People v. Wilkins* (1993) 14 Cal.App.4th 761, 777; CALCRIM No. 2670.) "The term exigent circumstances describes an emergency situation that requires swift action to prevent (1) imminent danger to life or serious damage to property, or (2) the imminent escape of a suspect or destruction of evidence." (CALCRIM No. 2670, italics removed.)

In addressing a claim of insufficient evidence, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — evidence that is reasonable, credible and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

### B. Analysis

Here, neither party disputes the police arrested defendant at his home without a warrant. Defendant also does not suggest the police lacked probable cause to arrest him. Instead, he argues the police did not act lawfully because the warrantless arrest was not justified by exigent circumstances. He emphasizes the officer's testimony that he saw smoke under the door was not a genuine exigent circumstance. The Attorney General does not rely on the latter facts and instead argues exigent circumstances existed because defendant could have escaped while the officers sought a warrant. The Attorney General also argues exigent circumstances existed because defendant's blood alcohol content would have diminished as his body metabolized the alcohol while officers sought a warrant. We agree the dissipation of blood alcohol evidence constituted an exigent circumstance under the facts of this case.

6

In *People v. Thompson* (2006) 38 Cal.4th 811 (*Thompson*), our Supreme Court held a warrantless entry into the defendant's home to arrest him for driving under the influence was justified to prevent the imminent destruction of evidence. After a female observed the defendant was intoxicated, she decided to follow his vehicle while he drove recklessly, and she called the police. (*Id.* at p. 815.) The police eventually found the defendant's vehicle parked in front of his residence. (*Id.* at p. 816.) The officers approached the house door, which was wide open, and rang the doorbell. A female answered the door and indicated the defendant owned the vehicle outside. An officer asked to speak with the defendant, but the female said he was sleeping. After the officer asked if she could wake up the defendant, the female entered a bedroom and then came back to tell the officers she could not wake up the defendant. She also refused to let the officers inside. (*Ibid.*) An officer then heard people speaking inside and saw the defendant leave the house and go into the backyard. When the defendant turned around, the officer motioned for him to come to the door. The defendant reentered the house and approached the officers while staggering and smelling of alcohol. An officer explained they suspected the defendant of driving under the influence and wanted to perform some tests, but the defendant did not cooperate. The officer then entered the house, placed his hand on the defendant's shoulder, and arrested the defendant. (*Ibid.*)

Based on the above facts, our Supreme Court agreed with the Attorney General's assertion that the "defendant's blood-alcohol level would have diminished while the police sought a warrant as the body metabolized the alcohol" and the "defendant could have masked his blood-alcohol level while the police sought a warrant by ingesting more alcohol." (*Thompson*, *supra*, 38 Cal.4th at p. 825.) But the court emphasized that in "holding . . . exigent circumstances justified the warrantless entry here, we need not decide — and do not hold — that the police may enter a home without a warrant to effect an arrest of a DUI suspect in *every* case." (*Id.* at p. 827.) Instead, the

court expressed a preference for case-by-case assessments based on a totality of the circumstances. (*Ibid.*)

Here, as in *Thompson*, the police had reasonable suspicion defendant had committed a crime. T.K. reported defendant's vehicle was involved in a hit-and-run accident, and the police found the vehicle with clear signs of damage in a 15 minute parking zone. The hood of the vehicle also was warm suggesting it was recently driven, and the driver's side window was slightly open with the trunk unlatched. When defendant answered the door after several minutes, he smelled of alcohol and was uncooperative. Although the officers asked him to come outside, he refused. At trial, Officer Song testified he believed defendant was being uncooperative as a delay tactic to lower his blood alcohol content. He explained alcohol in someone's system dissipates as time passes. He also testified about stall tactics commonly used by suspects.

Defendant does not dispute the "'delay necessary to procure a warrant . . . may result in the destruction of valuable evidence,'" or that "'blood and breath samples taken to measure whether these substances were in the bloodstream when a triggering event occurred must be obtained as soon as possible.'" (*Thompson*, *supra*, 38 Cal.4th at p. 825.) Instead, defendant argues the jury was not presented with sufficient information about how alcohol dissipates in the body. He emphasizes Officer Song was not an expert witness on the issue. Contrary to defendant's assertion, an expert witness testified alcohol is eliminated from an average person's body at a regular rate. The expert further indicated he could determine someone's blood alcohol content at an earlier time because "blood alcohol concentration is going to decline every hour." We accordingly are not persuaded by defendant's argument. Defendant also claims spoliation of blood alcohol evidence could not have created an exigent circumstance because Officer Song waited for backup when he arrived at the apartment. But the time it took for backup to arrive was surely not as long as it would take to obtain a warrant. In any event, Officer Song waited for backup *before* knocking on defendant's door. We do not see how this is relevant to

8

the spoliation risk that existed if the officers tried to obtain a warrant *after* defendant had spoken to them and refused to cooperate. Indeed, as the Attorney General notes, defendant could have ingested more alcohol to mask his blood alcohol level while they waited for a warrant. He alternatively could have eaten food, which also would have affected his blood alcohol level.

Based on a totality of the circumstances, there was substantial evidence the police acted lawfully in the performance of their duties when they arrested defendant due to exigent circumstances. (*Lange v. California* (2021) ___U.S.___ [141 S.Ct. 2011, 2024] [holding that the "flight of a suspected misdemeanant does not always justify a warrantless entry into a home" and that an "officer must consider all the circumstances in a pursuit case to determine whether there is a law enforcement emergency"].)

*Substantial Evidence Supporting Defendant's Conviction for Hit and Run with Injury*

Defendant next contends his hit-and-run conviction must be reversed because there was insufficient evidence he had actual or constructive knowledge the accident caused injury to another person. Viewing the evidence in the light most favorable to the judgment, we are not persuaded by defendant's argument.

Vehicle Code section 20001, subdivision (a) provides that "[t]he driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004." In *People v. Holford* (1965) 63 Cal.2d 74 (*Holford*), our Supreme Court added the mens rea requirement "that defendant [must] know that the accident resulted in injury to a person or know that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person." (*Id.* at p. 83.)

9

"The question of knowledge [is] a factual question for the determination of the" trier of fact." (*People v. Wolf* (1978) 78 Cal.App.3d 735, 740.) The driver's constructive knowledge of injury to the victim is sufficient because a "driver who leaves the scene of the accident seldom possesses actual knowledge of injury; by leaving the scene he forecloses any opportunity to acquire such actual knowledge." (*Holford, supra*, 63 Cal.2d at p. 80.) To determine whether the evidence supports a finding of knowledge, "a number of decisions look to the actual circumstances of the accident." (*People v. Harbert* (2009) 170 Cal.App.4th 42, 55.) "A pedestrian struck with sufficient force that he or she reaches the hood or windshield is treated as virtually unignorable. [Citations.] The extent of damage to the defendant's vehicle is routinely treated as particularly probative. [Citations.] A collision with the speed and force to cause death invariably draws comment." (*Id.* at p. 56.) The jury may also consider "defendant's conduct after his [vehicle] collided with the victim." (*Ibid.*)

Here, substantial evidence supports a finding of constructive knowledge. The accident "was of such a nature that one would reasonably anticipate that it resulted in injury to a person." (*Holford*, *supra*, 63 Cal.2d at p. 83.) When defendant hit T.K.'s vehicle, it damaged her right rear corner panel, and there was fresh collision damage on the left portion of defendant's vehicle. It appears the jury saw photographs depicting the damage to both vehicles. Those photographs showed significant damage to the right side of T.K.'s vehicle, which was smashed and dented in the back and above the right rear tire. The photographs also showed the left headlamp on defendant's vehicle was damaged with cracks in the surrounding area. T.K. further testified she felt impact from the collision, and R.P. testified he heard the accident. Finally, the accident occurred when it was daylight around 7:00 a.m. so the area was sufficiently illuminated to allow defendant to have determined he hit another vehicle. (*People v. Roche* (1942) 49 Cal.App.2d 459, 461 [considering the time of the accident in the morning as a relevant factor].)

Defendant's post-accident conduct also is relevant. He fled the scene and ignored R.P. when he knocked on the door of his vehicle. His vehicle was later found in a 15-minute parking zone near his home with the driver's side window open and the trunk unlatched, which caused an officer to believe defendant was in a hurry to flee. A jury could have relied on this evidence, along with the nature of the accident, to conclude defendant had knowledge of the injury causing accident.

*People v. Carter* (1966) 243 Cal.App.2d 239, which defendant cites, is distinguishable. In *Carter*, the court found no basis to impute constructive knowledge of injury where the defendant's vehicle had only "slightly damaged" the other vehicle's bumper and the defendant stopped to ask if anyone was hurt. (*Id.* at pp. 240-241.) After the victim said he did not think there were any injuries, the defendant left the scene. (*Id.* at pp. 240-241.) Here, defendant never stopped or tried to determine whether T.K. was hurt so he had no grounds to conclude T.K. was unharmed after the accident. The nature of the accident in the instant case also does not appear to be as minor as the accident in *Carter*.

Ignoring the above evidence, defendant maintains he had no reason to think anyone was injured. He notes T.K. initially believed she had hit something before realizing another vehicle had hit her. He adds that T.K. and R.P. followed him after the accident, which suggested T.K.'s car was operable, and she was not injured. Finally, he claims there was no evidence regarding a high rate of speed or that T.K.'s vehicle "veered or was thrown [off] course." But the jury heard all of the evidence and rejected defendant's theory. Defendant's arguments amount to a request that we reweigh the evidence and substitute our judgment for that of the jury. We cannot do this as we do not resolve evidentiary conflicts or credibility issues. (*People v. Maury*, *supra*, 30 Cal.4th at p. 403.) Defendant also tries to minimize T.K.'s injuries by noting she refused the need for paramedics when she called the police. But Vehicle Code section 20001 does not require any particular degree of injury. Regardless, substantial evidence established she

11

did suffer injuries and received treatment after the accident.  In short, defendant's conviction on count 1 is supported by substantial evidence.

*The* Pitchess *Motion*

Before trial, defendant moved to discover the personnel records of Officers Song and Sepulveda.  (*Pitchess*, *supra*, 11 Cal.3d at p. 531.)  Defendant sought records from the police department's personnel files concerning, among other things, "[l]ack of credibility," "falsifying police reports," "[p]rior acts involving moral turpitude," and information pursuant to *Brady v. Maryland* (1963) 373 U.S. 83.  The court found good cause to review the officers' files (*People v. Samuels* (2005) 36 Cal.4th 96, 109), conducted an in-camera review (§ 1045, subd. (b)), and found two discoverable items that were turned over to defendant's counsel (see *People v. Mooc* (2001) 26 Cal.4th 1216, 1226-1232 (*Mooc*)).

On appeal, defendant moved to augment the appellate record with the confidential records reviewed by the court at the in-camera hearing.  We granted the motion and directed the clerk of the superior court to transmit a sealed supplemental clerk's transcript including the records considered by the court during the in-camera hearing.  Alternatively, if the court did not retain a copy of the files it reviewed during the in-camera hearing, we ordered the court to conduct a new hearing to augment the record on appeal with the records the trial court previously considered at the first in-camera hearing.  (*Mooc*, *supra*, 26 Cal.4th at p. 1231.)  At the conclusion of the hearing, we ordered the court to certify the records it reviewed were the same records it considered at the first in-camera hearing.  If the court certified the records were the same, we ordered the court to transmit a sealed supplemental clerk's transcript including a copy of the records considered at the first in-camera hearing.

12

In response to our order, the court held an in-camera hearing and certified the records it reviewed were the same records it considered at the first in-camera hearing. The clerk of the superior court then transmitted a sealed supplemental clerk's transcript including the records considered by the court during the in-camera hearing. Defendant requests we review the sealed transcript of the in-camera hearing and the documents reviewed by the court to determine if any documents were incorrectly withheld. The Attorney General agrees we should review the sealed materials.

We have reviewed the sealed transcript of the in-camera hearing and the records considered by the court during the hearing. The court placed the custodian of records for the Fullerton Police Department under oath in the presence of counsel for the Fullerton Police Department. The custodian generally described where an officer's personnel file are kept, including within the internal affairs office. The custodian then provided the records falling within the parameters of the request. The court examined the files with the custodian on the record, identified the documents it reviewed, and found two discoverable items that were turned over to defendant's counsel. With respect to the documents the court reviewed, the court did not err by finding there were only two discoverable items. But the court did not conduct a proper *Pitchess* review. Although the court reviewed the documents provided by the custodian of records, it did not question the custodian about what records had been reviewed to reach the conclusion that no other documents in the personnel file or internal affairs investigation file were responsive. "[T]he locus of decisionmaking is to be the trial court, not the prosecution or the custodian of records. The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion." (*Mooc*, *supra*, 26 Cal.4th at p. 1229.)

13

The instant case is like *People v. Guevara* (2007) 148 Cal.App.4th 62 (*Guevara*). In *Guevara*, the custodian of records testified that none of the officers' personnel files contained information responsive to the *Pitchess* motion. (*Guevara*, at p. 68.) The trial court did not review any documents from the personnel files or a sealed document listing what the custodian of records had reviewed. (*Ibid.*) The Court of Appeal reversed the judgment and remanded for a new *Pitchess* hearing. (*Guevara*, at p. 64.) The court explained the custodian of records "must establish on the record what documents or category of documents were included in the complete personnel file" when he or she does not produce the entire file for the court's review. (*Id*. at p. 69.) The court further held "if it is not readily apparent from the nature of the documents that they are nonresponsive or irrelevant to the discovery request, the custodian must explain his or her decision to withhold them." (*Ibid.*)

Here, it is unclear which documents were withheld by the custodian of records and why. We accordingly conditionally reverse the judgment and remand for the court to conduct a new *Pitchess* hearing where it must personally review the records or obtain a list of their contents and confirm the conclusion of the custodian of records. If the court finds there was discoverable evidence, it must then determine if defendant was prejudiced from the denial of discovery.

14

DISPOSITION

The judgment is conditionally reversed, and the matter is remanded to the court with directions to hold a new *Pitchess* hearing regarding Officer Song and Officer Sepulveda's records. If the court finds there is discoverable information, it shall determine whether defendant was prejudiced from the denial of discovery. If the court confirms the lack of discoverable evidence or finds that defendant was not prejudiced from the denial of discovery, the judgment shall be reinstated. In all other respects, the judgment is affirmed.

SANCHEZ, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.

15