[Crim. No. 319. Fourth Appellate District.—November 21, 1935.]

THE PEOPLE, Respondent, v. E. M. PAHNER, Appellant.

C. O. Thompson for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—This is an appeal from a judgment of conviction on a charge of failing to stop and render aid after an accident, and from an order denying a motion for a new trial.

About 5:45 P. M. on June 17, 1935, one Fred Miller, who was 77 years of age, was walking east on Valley Boulevard toward the city of Bloomington and carrying a roll of blankets, a coat and some newspapers. This road was paved to a width of twenty feet with an oiled shoulder seven or eight feet wide on either side of the pavement. While so walking on the south edge of the oiled shoulder on the south side of the highway, Miller was struck and thrown to the ground by an automobile which was also traveling toward the east. For convenience, this car will be referred to as the first car.

Another automobile, which will be referred to as the second car, was proceeding east a short distance behind the first car.

From testimony given by three occupants of the second car it appears that the first car entered the Valley Boulevard, from the south, about seventy-five feet in front of them and about a mile west of the point where Miller was struck; that as it entered the highway the first car went clear to the north side of the highway and nearly overturned in making the turn to the east; that it then proceeded east at a higher rate of speed than the second car, being from an eighth to a quarter of a mile ahead at the time Miller was struck; that as it proceeded the first car zigzagged from one side of the road to the other several times and was not driven straight at any time; that one of the men in the second car observed Miller walking on the south edge of the road when his view was not obscured by the first car as it went from one side of the road to the other; that immediately before the accident the first car swerved clear to the south side of the road and off the pavement; that the occupants of the second car then observed papers or something flying in the air; that the first car proceeded on its way at a rapid rate of speed; that the occupants of the second car came up and found Miller lying on the ground with his left elbow broken and a small hole in the fleshy part of his left arm; that they picked him up and delivered him to a constable at Bloomington, who took him to a hospital; that they also picked up his bundle, coat and papers; and that under his bedroll and coat they found an automobile door handle, the long end of which was covered with blood.

Between 9:30 and 10 o'clock that night the constable and another officer were called to the home of the appellant on an errand not connected with this accident and while there found that the appellant's automobile fitted the description of the automobile which had struck Miller, being of the same make, model and color. On examining the appellant's car the constable found that the handle on the door on the right side had been broken off and was missing and that the post in the lock, which had held the handle, was bent backward. The handle which had been found corresponded exactly with the handle on the other side of appellant's car and its broken metal looked like that on the post in the lock on the right side of the car, both indicating a fresh break. The long end of the handle on the left side of appellant's car pointed forward.

The first car was well described by the occupants of the second car, two of whom gave a general description of its

driver. One of these witnesses pointed out the appellant in the courtroom as the driver of the first car, and it cannot be seriously questioned that he was the driver of the car which injured Miller, and that he immediately left the scene of the accident without stopping or rendering any aid. The appellant earnestly contends, however, that the evidence is not sufficient to establish the fact that he knew that a human being had been struck and injured. He admitted that he had passed along this road in his car, going east, at approximately the time of the accident, but he testified that he had no knowledge of having hit or injured anyone. Both the appellant and his wife testified that they had discovered that the handle was missing from the right door of their car on the morning of the day before this accident and that they did not know what had caused its absence. A significant fact appears in the constable's testimony that on the evening after the accident he discovered that the handle was missing from the right door of appellant's car, that he then stated to the appellant and his wife that he had the missing handle, that the appellant's wife then broke down and cried, and that neither of them then informed him that the handle had been missing on the day before. Two or three days after the accident the constable asked the appellant if he had hit this old man and the appellant refused to talk. It also appears that the accident happened in broad daylight, on a clear day, and that the handle of the door, which must have struck Miller's arm, was directly opposite the driver of that car as he sat at the wheel. It is hardly to be expected that direct testimony could be obtained in such a case as this to the effect that a defendant knew that he had injured another person. From the nature of the case, such knowledge on the part of a driver, although a necessary element of the offense, must usually be proved by showing the surrounding facts and circumstances which indicate such a knowledge. We think the established facts here justify an inference that the appellant knew he had struck Miller and that the evidence is sufficient, in this respect, to support the verdict. (*People* v. *Libhart,* 79 Cal. App. 291 [249 Pac. 211] ; *People* v. *Leutholtz,* 102 Cal. App. 493 [283 Pac. 292].)

The appellant argues that the court erred in refusing to give an instruction offered by him. The material part of this instruction, which it is claimed was not covered in any

other instruction, reads as follows: "And in this connection you are instructed that there is no presumption that the defendant had knowledge, but on the contrary the presumption is that the defendant did not know that he had struck and injured said Miller. You are further instructed in this connection that the defendant is not required to prove that he did not know he had struck and injured said Miller, but the prosecution is required to prove beyond a reasonable doubt that he had knowledge at the time that he had so struck and injured said Miller." The court read to the jury section 1096 of the Penal Code. Section 1096a of that code provides that no further instruction on the subject of presumption of innocence or defining reasonable doubt need be given. In addition, the court instructed the jury that the defendant is presumed to be innocent and not guilty of the offense charged until his guilt is proven to the satisfaction of each and every juror beyond a reasonable doubt, that this presumption is a matter of evidence to the benefit of which the defendant is entitled, that this presumption is not a mere form but is a substantial part of the law, that no suspicion or probability, however strong, and no mere preponderance of the evidence is sufficient to overcome the presumption of innocence, and that this presumption continues as long as there is a reasonable doubt of any material fact necessary to convict the defendant of the crime charged against him. The jury was then repeatedly instructed that the law raises no presumption against a defendant, that he is presumed to be innocent, that this presumption overcomes all other presumptions and that every fact and circumstance in the case is to be construed and explained by them as consistent with the innocence of the defendant if the same can be done by any reasonable construction or explanation. Everything contained in the proffered instruction was sufficiently covered in other instructions given and we find no error in the refusal of the instruction here in question.

It is next urged that the court erred in giving an instruction which reads as follows:

"The driver of any vehicle involved in any accident resulting in injury or death to any person or damage to property shall also give his name, address and the registration number of his vehicle and exhibit his operator's or chauffeur's

license to the person struck or the driver or occupants of any vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or such carrying is requested by the injured person.''

''Therefore, if you are satisfied beyond a reasonable doubt that the defendant in this case, E. M. Pahner, was on or about the date charged, in the County of San Bernardino, State of California, involved in an accident resulting in the injury of one Fred Miller, and that said defendant was the driver of the automobile which was at that time involved in said accident, and that said defendant did fail to stop at the scene of said accident or give his name, address and the registration number of his vehicle, or exhibit his operator's or chauffeur's license to the person injured in such accident, and it was then and there apparent that such aid or treatment was necessary, then you should find the defendant guilty as charged in the Information.''

It is argued that this instruction purports to set out all of the essential elements of the offense charged but that it erroneously omits one of those elements, namely, that the defendant had knowledge at the time that he had caused an injury to Miller. The appellant relies upon *People* v. *Wallace,* 2 Cal. App. (2d) 238 [37 Pac. (2d) 1053], and *People* v. *Rallo,* 119 Cal. App. 393 [6 Pac. (2d) 516]. These cases hold that a defendant in such a case is entitled to a specific instruction to the effect that he must have had knowledge of the fact that he had injured a person. We think the instruction here in question is erroneous in that it does not definitely state that it must be apparent to the defendant that the rendering of aid was necessary. We are not convinced, however, that this error would justify a reversal in view of section 4½ of article VI of the Constitution. After reading all of the instructions it is not possible to believe that the jury could have been misled by this omission in this instruction into applying an incorrect rule of law (*Ward* v. *Read,* 219 Cal. 65 [25 Pac. (2d) 821]). In the instruction in question the court had been referring to the appellant and to what he did or failed to do. While the concluding language thereof could be taken as re-

ferring to whether or not the necessity of aid was apparent to the injured party, the only other person present at the time, it would naturally be taken as referring to whether the necessity for aid was apparent to the appellant, about whom the court had been speaking, and it would require a rather strained construction of the language used to conclude that the jury could have taken it the other way. This is especially true since the court thereafter gave another instruction in which the jury was told that the prosecution must prove by competent evidence to a moral certainty and beyond a reasonable doubt each and every material element constituting the offense charged in the information. The elements constituting the offense are then carefully enumerated, including the following:

"(e) That the defendant, at the time of the accident knew of the accident and knew that said Miller had been injured thereby.

"(f) That the defendant, with knowledge that said Miller had sustained injuries resulting from the accident, wilfully failed to immediately stop said vehicle at the scene of the accident, and failed to give his name, address and registration number of said vehicle and failed to exhibit his operator's license to said Miller, and did wilfully fail to render reasonable assistance to said Miller, and wilfully failed to carry the said Miller to a physician, surgeon, or hospital for medical or surgical treatment."

In the same instruction the jurors were then told that if they had any reasonable doubt as to whether any one of these material elements of the offense had been proved beyond all reasonable doubt they must acquit the defendant even though they might believe that other elements of the offense had been so proven. The matter of knowledge on the part of the appellant was thoroughly and completely covered in the instructions and a reading of the entire record leaves us far from convinced that a miscarriage of justice has occurred. Under these circumstances the error referred to, which is more apparent than real, comes within the spirit and meaning of the constitutional provision referred to.

It is next claimed that the court erred in certain oral comments made to the jury after the instructions were given and just before the case was submitted. It would serve no useful purpose to set forth these comments here. While the

court referred to portions of the evidence he was fair in the extreme and in no way indicated his own views to the jury but, on the other hand, clearly and plainly informed them that they were the exclusive judges of all of the evidence, of all of the facts and of the credibility of the witnesses, and that he was in no way urging a conviction or an acquittal.

■ Error is assigned in the admission of evidence to the effect that the appellant showed signs of intoxication at a service station in Bloomington a few minutes after the accident occurred and that he was intoxicated when the officers went to his home between 9:30 and 10 o'clock that night. We think this evidence was competent as one of the facts surrounding the accident (*People* v. *Libhart, supra*).

■ The last point raised is that the court erred in sustaining an objection to four questions asked of the appellant while on the stand. The first of these is said to have been asked for the purpose of impeaching another witness. No answer to the question could have had that effect and any possible impeachment would have been upon an immaterial matter. The second and third questions related to immaterial matters, the answers to which could not have had any such effect as that ascribed to them in the argument. The fourth called for a self-serving declaration which was plainly not admissible.

The judgment and order appealed from are affirmed.

Marks, J., and Jennings, J., concurred.