[No. F060054. Fifth Dist. Aug. 24, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW MACE, Defendant and Appellant.

## Counsel

Donn Ginoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Charles A. French, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WISEMAN, Acting P. J.**—Defendant Andrew Mace was convicted of violating Vehicle Code section 20001 for leaving the scene of a one-vehicle accident without assisting a person injured in the accident. On appeal, Mace raises various instructional errors. We hold that a driver's knowledge that a person involved in an accident is injured gives rise to a duty to ascertain what assistance the injured person may need. We also hold that any person who is considered a "driver" for purposes of the hit-and-run statutes has a duty to render assistance to other persons in the same vehicle who are injured in the accident, including the actual driver of the vehicle. We reject Mace's remaining arguments and affirm the judgment.

## *FACTUAL AND PROCEDURAL HISTORIES*

On October 26, 2008, at approximately 3:11 a.m., Kern County firefighters, including Andrew Duitsman, responded to an accident reported in a residential area known as the Powers tract in the community of Weldon, near Lake Isabella. A pickup truck was on the right-hand shoulder of Powers Lane with the front end up against a power pole. The power pole was sheared off at the base, and power had gone out in Weldon at 1:47 a.m. Pauline Mace, defendant's sister, was in the truck, on the passenger's side. Pauline did not have any visible injuries but indicated that she had pain in her left leg. Duitsman asked Pauline if she was the driver or passenger to determine whether there were other injured persons they might need to look for, and she responded that she was a passenger. Pauline was taken to the hospital and was diagnosed with a left hip dislocation. She also showed signs of hypothermia—her temperature was reported in the 95-degree range. A doctor who saw Pauline later that morning observed bruising around her left eye and on her chin.

California Highway Patrol Officer Jason Kremsdorf interviewed Pauline at the hospital at approximately 5:00 a.m. Pauline said that she had been drinking with her brother, Mace, at the Kampgrounds of America (KOA) bar right before the accident. She told Kremsdorf that Mace was driving. Kremsdorf believed Pauline had been drinking based on her slurred speech and bloodshot, watery eyes.

Kremsdorf found Mace at Pauline's daughter's house on Roberts Lane, about a 10th of a mile from the accident. Mace was sleeping on a couch. Kremsdorf asked Mace to come outside and asked him about the accident. Mace said he did not know anything about it. He said he had been drinking

on Rancheria Road and did not know how he got home. Kremsdorf asked if he had any keys on him, and Mace responded that he had the keys to his truck.

Kremsdorf administered two breath tests with a preliminary alcohol screening device, and Mace's blood-alcohol concentration was measured at 0.168 and 0.171 percent, roughly double the legal limit. Mace was arrested and taken to the hospital. A blood sample was taken from Mace at 6:49 a.m. and analyzed to have a blood-alcohol concentration of 0.17 percent. At the hospital, Kremsdorf told Mace he believed Mace was the driver of a vehicle involved in an injury traffic collision and he had been under the influence of an alcoholic beverage and had fled the scene. Mace told Kremsdorf that he was not driving. Asked who was driving, Mace responded, " 'I don't know. It was somebody else.' " Mace denied memory of the collision and said no one had permission to drive his truck. Kremsdorf did not notice any injuries on Mace.

On December 10, 2008, an information was filed charging Mace with three counts: (1) driving under the influence of alcohol or drugs and causing bodily injury to a person other than the driver (Veh. Code,[1] § 23153, subd. (a)); (2) driving with a blood-alcohol content of 0.08 percent or more and causing bodily injury to a person other than the driver (id., subd. (b)); and (3) failing to render assistance to an injured person or otherwise perform duties required under sections 20003 and 20004 (§ 20001, subd. (a)). On counts 1 and 2, it was alleged that Mace had two prior convictions for driving under the influence within 10 years (§ 23566) and, for all counts, it was alleged that he personally inflicted great bodily injury causing the offense to be a serious felony (Pen. Code, §§ 12022.7, 1192.7, subd. (c)(8)).

Jury trial began on February 23, 2010. Pauline testified that, on October 25, 2008, she spent the day with Mace. In the morning, he picked her up in his truck and they went to a funeral. After the funeral, they went to a house and Pauline began drinking, but she did not see Mace drinking. Later, they went to a KOA bar with their sister Yvonne. Pauline drank beer, but she did not see Mace drinking alcohol. He drank coffee at the bar.

Pauline did not remember leaving the KOA bar and did not recall anything until she woke up after the accident. She attributed her lack of memory to her alcohol consumption. Pauline remembered a paramedic waking her up and asking her if she knew she had been in an accident. Her body was on the

---

[1] All further statutory references are to the Vehicle Code unless otherwise stated.

floor and her face was on the seat of the truck. She was in pain and her left leg or hip was dislocated. Pauline testified that a paramedic asked if her brother was driving and she said, " 'Um, maybe,' " and the paramedic asked if she was driving and she said, " 'Yeah, maybe.' " Mace was not present at that point. Pauline was taken by ambulance to a hospital. At trial, Pauline did not remember having spoken to Officer Kremsdorf in the hospital. She did not remember talking to a doctor in the hospital. Pauline testified that, a few days after the accident, she said to her sister Sherry, "Could I have been driving?"

Mace testified on his own behalf. On October 25, 2008, he picked up Pauline and drove to a funeral. After the funeral, Mace drove them to a house where Pauline drank alcohol and Mace drank water and soda. Then he drove with Pauline to the KOA, a local hangout. Mace and Pauline were there for three or four hours, and during this time, he drank three-quarters or less of a beer. He saw Pauline drink five or six beers. Around 11:00 p.m., Mace and Pauline left the KOA bar and drove by Pauline's daughter's house to see what was going on.

Mace asked Pauline if she wanted to go "up on the hill" where some friends and relatives of Mace live. The hill is about a 10-minute drive from Powers Lane. Mace drove to the hill with Pauline and told her that they would be staying there because he was going to be drinking. After they parked, Pauline told Mace she would be out in a minute and he left her in the truck with the keys in the ignition. He drank beer and mixed drinks with his friends. At some point, "everyone started . . . going to sleep," and Mace's friend offered a trailer to sleep in, but Mace went to sleep in his truck with his sister. Pauline never left the truck to join Mace on the hill. Mace got in his truck on the passenger side. Pauline was asleep, lying in the middle of the bench seat, and Mace scooted her toward the driver's side. The truck had a bench seat and no console in the middle, so a person could slide from one side to the other. Mace went to sleep.

His next memory was waking up in his truck. Mace did not know how his truck came to rest against the power pole on Powers Lane. He was "pretty buzzed." His knees were on the floorboard and his head and chest were on the seat. He saw Pauline passed out behind the wheel, and he got out of the truck. He took the key out of the ignition because he did not want Pauline going anywhere. Mace testified that he did not realize anything was wrong and walked home, a distance of about two blocks. He told the jury, "I didn't consider anything, but—I seen her, thought she was passed out, and that was it." Mace's next memory was waking up on the couch to a couple police officers.

Mace testified that Pauline had driven his truck in the past and that she had permission to drive his truck "[a]round the tract," meaning around Powers Lane. Pauline testified that she had driven Mace's truck once prior to the accident. She drove the truck in the area around where she lived.

On March 1, 2010, the jury found Mace guilty of count 3 and found the great-bodily-injury enhancement to be true. The jury was unable to reach a verdict in counts 1 and 2, and the court declared a mistrial on those counts. Mace was sentenced to the middle term of two years in prison for count 3. The enhancement for great bodily injury was stayed pursuant to Penal Code section 654.

## DISCUSSION

Mace was convicted of violating section 20001. "Although a violation of section 20001 is popularly denominated 'hit-and-run,' the act made criminal thereunder is not the 'hitting' but the 'running.' " (*People v. Corners* (1985) 176 Cal.App.3d 139, 148 [221 Cal.Rptr. 387].) Section 20001, subdivision (a), provides: "The driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004."

Section 20003, subdivision (a), in turn, requires "[t]he driver of any vehicle involved in an accident resulting in injury to or death of any person," among other things, to "render to any person injured in the accident reasonable assistance, including transporting, or making arrangements for transporting, any injured person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if that transportation is requested by any injured person."

"Section 20001 has long been deemed to impose a knowledge requirement which requires proof the accused knew or was aware that (1) he or she was involved in an accident and (2) the accident resulted in injury to another." (*People v. Harbert* (2009) 170 Cal.App.4th 42, 45 [87 Cal.Rptr.3d 751].) Knowledge of injury to another may be constructive. (*People v. Holford* (1965) 63 Cal.2d 74, 80 [45 Cal.Rptr. 167, 403 P.2d 423] ["criminal liability attaches to a driver who knowingly leaves the scene of an accident if he actually knew of the injury or if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person"].) Likewise, knowledge that one has been involved in an accident may be constructive. (*People v. Harbert, supra*, at pp. 52–53 [affirming conviction based on constructive knowledge that defendant had been in accident and rejecting argument that actual knowledge of involvement in accident was required under § 20001].)

### I. *Jury instructions*

■ On appeal, Mace raises three instructional errors. At trial, Mace did not object to the instructions and did not request the amplifying and pinpoint instructions discussed in his opening and supplemental appellate briefs. Ordinarily, "[a] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Lang* (1989) 49 Cal.3d 991, 1024 [264 Cal.Rptr. 386, 782 P.2d 627]; see also *People v. Scheer* (1998) 68 Cal.App.4th 1009, 1026 [80 Cal.Rptr.2d 676] (*Scheer*) [appellant forfeited issues on appeal by failing to object to CALJIC No. 12.70 and failing to request amplifying instructions].) We will address Mace's arguments for two reasons: (1) he claims the instructions did not include all the elements of the offense and this violated his right to due process (see Pen. Code, § 1259) and (2) because he raises an ineffective-assistance-of-counsel claim based on trial counsel's failure to request pinpoint instructions.

After conference with counsel in chambers, the court instructed the jury with a modified version of CALJIC No. 12.70:

"The defendant is accused in Count Three of having committed the crime of felony hit and run, in violation of Section 20001(a)(b)(1) of the Vehicle Code. [¶] . . . [¶]

"Every person who, as a driver of any vehicle, is knowingly involved in an accident resulting in injury to any other person other than himself must, one, immediately stop the vehicle at the scene of the accident.

"Two, give his name, current residence address, registration number of the vehicle he is driving, and the name and current address of the owner of the vehicle to the person struck or the driver or occupants of any vehicle collided with and to any traffic or police officer at the scene of the accident and the driver or injured occupant of the driver's vehicle shall, upon request, if available, exhibit his or her driver's license to such person—persons or officer.

"Three, render reasonable assistance to any person injured in the accident, including the transportation or making arrangements for the transportation of any injured person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or that transportation is requested by the injured person.

"A willful failure of a driver of any vehicle to comply with any one of these duties when involved in an accident resulting in injury is a violation of Vehicle Code section 20000(a)(b)(1) [*sic*] of a crime.

"The word 'knowingly' means that the driver of the vehicle involved knew that an accident had occurred, knew that he was involved in the accident, and either knew that the accident resulted in injury to a person or knew that it was necessary—or knew that it was of such nature that it was probable that it resulted in injury.

"The word 'involved' as used in this instruction means being connected with an accident in the natural or logical manner.

"To be involved in an accident does not require that the vehicle collide with another vehicle or person.

"In order to prove a violation of Vehicle Code section 20001(a)(b)(1), each of the following elements must be proved:

"A person, while driving a motor vehicle, was involved in an accident resulting in injury to another person.

"That person knew that the accident had occurred, knew that he was involved in the accident, and either knew that the other person had been injured or from the nature of the accident it was probable that another person had been injured.

"That person willfully failed to perform one . . . or more of the following duties.

"[A] To immediately stop at the scene of the accident, [B] to give his name, current resident address, the registration number of the vehicle, and the name and current resident address of the owner of the vehicle to the person injured or to the driver or the occupants of the other vehicle, if any, and to any traffic or police officer at the scene of the accident and, though requested, failed to show his available driver's license.

"C, to render reasonable assistance to the person injured.

"Before you may find that the defendant violated Vehicle Code section 20001(a)(b)(1), you must agree that the defendant failed to perform one or more of the foregoing duties and also unanimously agree on at least one particular duty that he failed to perform.

"If you unanimously agree that you are not satisfied beyond a reasonable doubt that the defendant is guilty of a violation of Vehicle Code section 20001(a)(b)(1), you should find him not guilty in Count Three."

The court also gave CALJIC No. 12.76, explaining the duties of a nondriving owner of a vehicle:

"The term 'driver of the vehicle' as used in these instructions includes the owner of the vehicle who is riding therein at the time of the accident with full authority to direct and control the operation of the vehicle although some other person may be doing the actual driving.

"Under these circumstances, the owner of the vehicle, which, to his knowledge, has been involved in an accident resulting in injury or death to any person is required by law to cause the vehicle to stop and to perform the other duties imposed upon the driver of the vehicle as you have been instructed."

### A. *Knowledge of an injured person's need for assistance*

Mace's first argument is that the trial court erred by failing to instruct on knowledge of the duty to render assistance. Mace argues that it is not enough to instruct the jury that it must find that a defendant knew that an accident occurred, knew he was involved in it, and knew that a person was injured or that it was probable that a person had been injured based on the circumstances. According to Mace, the jury must be instructed that, in addition to finding that the defendant knew a person was injured, it must find that the defendant "knew assistance was required, or would have reasonably anticipated assistance was necessary." (Italics omitted.)

The People respond that sections 20001 and 20003 reasonably place the onus on the driver to check on the welfare of others in his vehicle when a collision occurs. We agree that, where a driver knows that a person has been injured in an accident, a duty arises to determine whether the injured person needs assistance.

In *Scheer, supra*, 68 Cal.App.4th at page 1028, the court recognized "the driver's duty to render necessary assistance under Vehicle Code section 20003, at a minimum, requires that the driver first ascertain what assistance, if any, the injured person needs, and then the driver must make a reasonable effort to see that such assistance is provided, whether through himself or third parties." Here, the jury was properly instructed that, to convict, it must find Mace "either knew that the accident resulted in injury to a person or . . . knew that it was of such nature that it was probable that it resulted in injury." The jury, therefore, must have found that Mace knew that Pauline was injured or knew the accident was of the nature that it was probable that she was injured. Under *Scheer*, this triggered a duty to "ascertain what assistance, if any," Pauline needed. (*Scheer, supra*, at p. 1028.)

Mace acknowledges that *Scheer* requires a driver to ask the victim if aid is necessary, but asserts "that is superfluous language in this case, because in this case the defendant was with the victim and could make observations about her condition himself." Mace, however, does not claim that he knew Pauline was injured but reasonably determined that she did not need assistance. For example, he does not claim that he asked Pauline how she was, and she responded that she was fine and could just sleep off her intoxication in the truck.

Although Mace frames his argument as a claim about the jury instructions, Mace actually is challenging the jury's implicit factual finding that he knew (or had constructive knowledge) that Pauline was injured. Mace asserts that the appropriate question for the jury was whether he acted reasonably by leaving Pauline in the truck, given the "fact" that "he concluded by looking at Pauline that *she was not injured . . . .*" (Italics added.) This "fact," however, is inconsistent with the jury's verdict, since it found, as discussed above, that Mace knew or should have known that Pauline was injured. We are not persuaded by Mace's attempt to distinguish *Scheer*.

Mace also cites *People v. Pahner* (1935) 10 Cal.App.2d 294 [51 P.2d 1143] as support for his position. In *Pahner* the court wrote, "It is argued that this instruction purports to set out all of the essential elements of the offense charged but that it erroneously omits one of those elements, namely, that the defendant had knowledge at the time that he had caused an injury." "Cases hold that a defendant in such a case is entitled to a specific instruction to the effect that he must have had knowledge of the fact that he had injured a person. We think the instruction here in question is erroneous in that it does not definitely state that it must be apparent to the defendant that the rendering of aid was necessary." (*Id.* at p. 299.) Taken in context, the *Pahner* court was only recognizing the established rule that knowledge of injury is an element of the offense; it was not creating an additional element. To the contrary, the court apparently *equated* knowledge of an injury with the fact that "it must be apparent to the defendant that the rendering of aid was necessary." We also observe that, although *Pahner* was decided in 1935, we are aware of no authority that has relied on *Pahner* for the position advanced by Mace. We conclude that Mace's reliance on *Pahner* is misplaced.

The instruction given correctly states the law. (*Scheer, supra,* 68 Cal.App.4th at p. 1027 [CALJIC No. 12.70, "which essentially tracks the language of Vehicle Code section 20003, subdivision (a), is a correct recital of the law"]; see also *People v. Poggi* (1988) 45 Cal.3d 306, 327 [246 Cal.Rptr. 886, 753 P.2d 1082] ["The language of a statute defining a crime or defense is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification."].)

Mace has not demonstrated that an amplifying instruction regarding knowledge of the injured person's need for assistance was required under the evidence presented in this case. (See *Scheer, supra*, at pp. 1027–1029 [no error from omission of proposed amplifying instruction on duty to provide aid, which was not supported by evidence].) We conclude, therefore, that there was no instructional error in this respect.

B. *Owner's duty where the driver is injured*

Mace's second argument is that the trial court erred by failing to instruct the jury that he was entitled to an acquittal if it did not find beyond a reasonable doubt that he was the actual driver. Mace contends that the trial court should have instructed the jury that, "if [Mace] was the passenger and did not inflict any injury as a result of his conduct, he had no duty to render assistance to Pauline because in that case her injuries were self-inflicted." In other words, Mace contends that an owner who is a passenger in his own vehicle has no duty to render assistance to a person injured in an accident if the injured person is the driver of the owner's vehicle. We reject this contention.

Although sections 20001 and 20003 impose duties on a "driver" involved in an accident, courts have long held that "an owner present in his vehicle at the time of an accident and who has full authority to direct and control its operation, although some other person is doing the actual driving, is considered to be a driver as the term is used in [sections 20001 and 20003]." (*People v. Monismith* (1969) 1 Cal.App.3d 762, 766 [81 Cal.Rptr. 879]; see also *People v. Odom* (1937) 19 Cal.App.2d 641, 647 [66 P.2d 206] [under earlier hit-and-run statute, term " 'driver of the vehicle' " included "the owner of the machine who is present and has the control of its operation"].) For example, in *People v. Odom, supra*, at page 643, the defendant was the owner riding in the backseat of his own car while his son was driving. The car hit a pedestrian, and the defendant told his son " 'to drive on.' " (*Id.* at p. 644.) Affirming the defendant's conviction under an earlier hit-and-run statute, the court recognized, "The offense of failing to stop an automobile which has struck and injured a person and to render assistance to the victim of the accident, as provided by [the predecessor statute] of the Vehicle Code, applies with equal force to the owner of the machine who is riding therein at the time of the accident with full authority to direct and control the operation as it does to the person who is actually driving the vehicle." (*Id.* at p. 647.)

In the present case, the jury was properly instructed on the ownership-and-control theory of liability as stated in CALJIC No. 12.76. Consequently, the jury, assuming it did not find that Mace was the actual driver, must have

found that he was "the owner of the vehicle who [was] riding therein at the time of the accident with full authority to direct and control the operation of the vehicle . . . ."

In asserting that he would have no duty to render aid to Pauline if she were the driver, Mace points out that section 20001, subdivision (a), imposes duties on a "driver of a vehicle involved in an accident resulting in injury to a person, *other than himself or herself* . . . ." (Italics added.) He calls this an exemption from the duties of sections 20001 and 20003 for a driver who is involved in an accident that results in injury to no one other than the driver himself. Mace states that "the issue is whether liability can be imputed to the non-driving owner when to do so would split the exempted 'driver' who injures himself, into two entities and impose a Good Samaritan duty to aid someone the statute does not intend to protect."

Assuming for the moment that the jury determined that Pauline was driving at the time of the accident and found Mace liable under the ownership-and-control theory, then section 20001, subdivision (a), did not impose any duties on Pauline, because no one else was injured. Mace appears to argue that, since no statutory duties were imposed on the actual driver, no such duties could possibly arise for anyone else involved in the accident either. We see no basis for this position. Under the scenario where Pauline was the driver, Mace was not vicariously or derivatively liable based on Pauline's conduct. His duties under section 20001, subdivision (a), arose independently because, under the ownership-and-control theory, he also had the duties of a "driver." (See *People v. Rallo* (1931) 119 Cal.App. 393, 396–397 [6 P.2d 516] [recognizing that owner/passenger could be charged under hit-and-run statute where actual driver had been acquitted of same charge].) Thus, Mace was required to render reasonable assistance to Pauline—a "person injured in the accident."[2] (§ 20003, subd. (a).)

■ Mace argues that he had no duty to render assistance to Pauline because "the statute does not intend to protect" her. To the extent Mace's argument is that Pauline was not owed a duty of assistance because she caused the accident, this argument lacks merit. Whether an injured person "was at fault or contributed to causing the accident" is irrelevant in determining liability under the hit-and-run statutes. (*People v. Harbert, supra*, 170 Cal.App.4th at p. 55, fn. 10.) To the extent Mace's argument is that he had no duty to render assistance because he was not at fault in the accident, this argument also lacks merit. (*People v. Bammes* (1968) 265 Cal.App.2d 626, 632 [71 Cal.Rptr. 415] [duties of § 20001 are "imposed upon the driver

---

[2] Mace does not claim that Pauline was not injured in the accident. Nor does he dispute that, generally, the duty to render assistance is owed to an injured person in the same vehicle as the driver. (See, e.g., *People v. Kinney* (1938) 28 Cal.App.2d 232, 239 [82 P.2d 203].)

whether or not he is responsible for the accident"]; *People v. Scofield* (1928) 203 Cal. 703, 708 [265 P. 914] ["requirements of the [hit-and-run] statute are operative and binding on all drivers involved in an accident regardless of any question of their negligence respectively"].)

Mace also argues that the purpose of the statutes "is to identify the driver and fix the responsibility for the injury on the culpable party." He argues that to impose a duty to render assistance on a "non-culpable passenger is irrational." But section 20001 "was [also] enacted for the protection of persons injured in an accident, and was designed to prohibit drivers, under pain of punishment, from leaving such persons in distress and danger for want of proper medical or surgical treatment. Reasonable and prompt assistance may prevent aggravation of or further injuries, or may save a life. These are but humanitarian acts required to be performed by all drivers of vehicles involved in accidents causing injuries, whether or not they are responsible for the accident." (*Bailey v. Superior Court* (1970) 4 Cal.App.3d 513, 521 [84 Cal.Rptr. 436].) Considering the humanitarian purpose of the statutes, it is not irrational to impose on an owner with control over the vehicle a duty to render assistance to a driver injured in his vehicle.

In sum, the owner of a vehicle who is riding in the vehicle at the time of an accident and who has full authority to direct and control the operation of the vehicle is required to fulfill the duties of a "driver" described in sections 20001 and 20003. Further, a "person injured in the accident" may include the person who is actually driving the vehicle.

### C. *Control over the vehicle*

Mace's third argument is that the trial court erred by failing to instruct the jury that he "was entitled to an acquittal if it did not find beyond a reasonable doubt that he had actual physical control of the vehicle and/or that the vehicle was being driven with his permission and under his direct control."

As discussed above, the jury was properly instructed on the ownership-and-control theory of liability. If the jury did not find that Mace was the actual driver, it must have found that he was the owner with control over the vehicle.

Mace relies on *People v. Green* (1950) 96 Cal.App.2d 283, 285–286 [215 P.2d 127], in which one of three passengers commandeered operation of a vehicle from its owner who then jumped or fell out of it and was injured. The court held that the two nondriving, nonowner passengers could not be

considered "drivers" for purposes of the hit-and-run statutes. (*Id.* at p. 290.) The court noted that there was no evidence that either of the nondriving passengers suggested to the driver that he drive on after the accident or exercised control of the vehicle. (*Ibid.*) *Green* is not analogous to this case. Here, Mace owned the truck, he testified that Pauline had permission to drive his truck around the tract, and, when he woke up in the truck after the accident, he took the keys out of the ignition because he "[d]idn't want [Pauline] to go anywhere." This was evidence from which the jury could reasonably determine that Mace had ownership and control over his truck.

Mace argues that he cannot be held liable because Pauline drove his truck without his consent. Mace raises the possibility that an owner could be convicted for failing to render assistance where he is carjacked and placed in the trunk of his own vehicle. We do not dispute that there may be circumstances where the owner of a vehicle present during an accident does not have control over his vehicle and "consent" may be an issue. This, however, is not such a case. At trial, his counsel asked, "does [Pauline] have permission to drive your vehicle?" Mace responded, "Around the tract." Under the evidence presented in this case, an amplifying instruction on consent was not required.

## II.   *Ineffective assistance of counsel*

■     Finally, Mace contends that trial counsel rendered ineffective assistance by failing to request the pinpoint or amplifying instructions discussed above. "The standard for showing ineffective assistance of counsel is well settled. 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.' " (*People v. Gray* (2005) 37 Cal.4th 168, 206–207 [33 Cal.Rptr.3d 451, 118 P.3d 496].) We have concluded that the instructions given correctly stated the law. We have also rejected the instructions suggested by Mace on appeal because (1) the evidence did not call for an amplifying instruction on knowledge of an injured person's need for assistance; (2) contrary to Mace's suggested instruction, an owner may be required to render assistance to an injured driver; and (3) the evidence did not call for an amplifying instruction on consent. Consequently, Mace's trial counsel's performance obviously did not fall below an objective standard of reasonableness for failing to request these instructions.

## *DISPOSITION*

The judgment is affirmed.

Levy, J., and Gomes, J., concurred.