Filed 3/27/14  P. v. Craddock CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047347 |
| v. | (Super. Ct. No. 09WF1069) |
| ROGER RAMON CRADDOCK, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Reversed in part, affirmed in part.

David P. Lampkin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

After two trials, Roger Ramon Craddock was convicted of 11 counts of lewd conduct with a child under age 14 and one count of forcible lewd conduct with a child under age 14.  The first jury found him guilty of four counts (counts 2-5), but could not reach a verdict on the remaining counts.  The second jury convicted Craddock of the remaining counts.  The trial court sentenced Craddock to a determinate term of eight years on count 1, plus 11 consecutive indeterminate terms of 15 years to life on the remaining counts pursuant to the "One Strike" law.

Craddock's sole contention on appeal is that his convictions on counts 6 and 7 violated the state and federal Constitutional protections against double jeopardy, because the second jury could have used the same facts to find him guilty of counts 6 and 7 as the first jury used to find him guilty of counts 2, 3, 4 and 5.[1]  We agree with Craddock, and reverse the convictions on counts 6 and 7 only.  The Attorney General also correctly asserts the abstract of judgment does not properly reflect the trial court's imposition of sentence.  Consequently, we have also ordered the clerk of the superior court to correct the abstract of judgment.  As modified, the judgment is affirmed.

## FACTS AND PROCEDRUAL HISTORY

In March 2011, the Orange County District Attorney filed a 12-count, first amended information alleging Craddock committed lewd acts with his four granddaughters, A.C. (count 1), C.C. (counts 2-7), M.C. (counts 8-10), and Mi.C. (counts 11-12).[2]  All of the counts pertaining to C.C. were alleged to have occurred between January 1, 1995 and December 31, 1999.  However, each count also described the specific act Craddock was alleged to have committed.  Count 2 specified the act as

---

[1]  Counts 6 and 7 were renumbered counts 2 and 3 in the second trial.  We retain the designation counts 6 and 7 for simplicity.

[2]  Craddock's appeal is limited to his double jeopardy claim, which involves only the counts related to C.C.  The other victims' testimony as to the various types of acts and the locations where these acts occurred was substantially similar to C.C.'s.

"rubbing vagina." Count 3 alleged "finger - first time" and count 4 alleged "finger - last time." Count 5 specified "oral copulation" as the act. Similarly, Count 6 alleged "dildo - first time" while count 7 alleged "dildo - last time."

The jury in Craddock's first trial convicted him on counts 2 through 5, but the jury was unable to reach a verdict on the remaining counts. The jury in Craddock's second trial convicted him on all of the remaining counts, including counts 6 and 7, and also found true all of the sentencing enhancement allegations.

*C.C.'s Testimony*

Craddock was the patriarch of a large extended family, including his four granddaughters A.C., C.C., M.C., and Mi.C.[3] The extended family met for holidays and special events, frequently at Craddock's home or at one of the various properties he owned in the desert and mountains.

C.C. was born in 1989 and 21 years old when she first testified. At the first trial, C.C. testified she visited Craddock's home on average three to five times a week from the time she started preschool until she turned nine. After age nine, C.C. spent less time with Craddock, but she maintained regular contact with him, including accompanying him on occasional camping trips.

C.C. was three or four years old when Craddock took her into a bedroom and showed her a video she later realized was pornography. She was about age six when he took her into his bedroom, removed her clothes, and rubbed her body, breasts, and vagina. This type of touching continued until she turned 17 years old, and it occurred at Craddock's home, her home, Craddock's trailer in the desert, and his ranch in the Sequoias.

C.C. testified Craddock often rubbed her breasts and forced her hand to touch his penis. He also put his hand between her legs when they were in a car or the

---

[3] Craddock's adopted daughter, L.R., testified under Evidence Code section 1108.

3

Jacuzzi. C.C. also testified Craddock licked her vagina, penetrated her vagina with his fingers, and penetrated her vagina with a blue dildo. He orally copulated her every time she spent the night at his house, and he digitally penetrated her the majority of the times she saw him. Oral copulation and digital penetration continued until she was 17 years old, while the penetration with the dildo occurred only seven or eight times and stopped before she was age 17.

C.C.'s testimony in the second trial was substantially the same as in the first trial. At the second trial she recalled the video Craddock showed her during a family gathering at Craddock's home. She also said Craddock French kissed her every time she visited him, kissed her breasts, squeezed her breasts and butt, licked her vagina, and penetrated her vagina with his fingers. He would also cop a "quick feel" through her clothes if someone was nearby, or he would force her to touch his penis.

C.C. said Craddock penetrated her vagina with a royal blue dildo several times, and that he put the dildo over his penis and secured it with a string around his hips. The dildo penetrated her vaginal area, and it was very painful. Craddock began using the dildo with C.C. when she was six or seven. Fondling and digital penetration continued until age 17, but oral sex stopped when she turned 13 or 14 years old.

In both trials, C.C. claimed Craddock told her to keep what they were doing a secret, and that he told her he would get into trouble and kill himself if she said anything. C.C. kept the secret for many years, but in February or March 2009 she learned that Craddock had also molested other young girls in the family, including her sister, M.C., and her cousins, A.C. and Mi.C. The molestations came to light after Mi.C. began having problems at school. Mi.C. told her mother Craddock had molested her, and Mi.C.'s parents contacted the police.

*Other Prosecution Evidence*

Police officers searched Craddock's various properties, but did not find any evidence of a sexual nature. The police also arranged to record two covert telephone

4

calls between C.C. and Craddock. Craddock did not deny molesting C.C. In fact, he essentially admitted molesting C.C. during the calls. He dissuaded her from talking to a counselor about it, and he claimed the molestations probably occurred because C.C. looked so much like her grandmother. He told C.C. he did not want to go to jail, and that it was just a "[b]ad situation that happened."

The prosecution also called an expert on child sexual abuse accommodation syndrome to testify about why children often do not disclose sexual abuse when it happens.

*Defense*

At trial, Craddock called several character witnesses who universally denied ever having seen any improper contact between Craddock and the victims.

*Jury Question*

During closing argument in both trials, the prosecutor provided the jury with a chart of the charges that listed the crimes in alphabetical order and listed specific acts on which the prosecutor sought to rely to prove each count.

The second jury submitted the following question during deliberations: "*Is it the job of the jury to make a determination for each charge based upon the specific act identified in each charge on the prosecutor's worksheet?*" (Italics added.) The court responded, with the parties' acquiescence, as follows: "The Prosecutor's worksheet was given to you as an aid to assist you in knowing what charges, verdicts and findings are for Counts 1 through 8 as well as the necessary lesser included charges to those Counts. The verdict forms also outline the individual charges/counts and any special allegations/findings attached to those Counts as well as the necessary lesser included offenses to those Counts. Please refer to the jury instructions for guidance as to the elements of each of the crimes and/or allegations as well as for any other matters you need to consider."

**DISCUSSION**

Craddock asserts that the manner in which the second trial was conducted created a risk the second jury convicted him on counts 6 and 7 based upon the same acts which the first jury used to convict him on counts 2, 3, 4, and 5. He contends the trial court (1) abused its discretion under Evidence Code section 352 (section 352) by permitting the prosecutor to introduce C.C.'s testimony from the first trial as propensity evidence (Evid. Code, §§ 1101, subd. (b), 1108), (2) failed to modify CALCRIM No. 1191, an instruction on evidence of uncharged crimes, to ensure the second jury did not rely on the same facts as the first jury to convict on counts 6 and 7, and (3) failed to link counts 6 and 7 to the use of a dildo when the jury submitted its question about the use of a dildo. According to Craddock, these three circumstances produced uncertainty about the factual basis of the second jury's conviction on counts 6 and 7. Therefore, Craddock asserts his convictions on counts 6 and 7 violate the double jeopardy provisions of the state and federal Constitutions.

We reject Craddock's first two contentions. As Craddock concedes, the trial court could properly admit C.C.'s testimony about acts related to counts 2 through 5 at the second trial under Evidence Code sections 1101, subdivision (b) and 1108. However, Craddock claims the court abused its discretion under section 352 by not considering the potential prejudicial impact of C.C.'s testimony, the likelihood of juror confusion on the issues this testimony would cause, and that the court failed to consider less prejudicial alternatives. We find no error.

The very factors Craddock cites are endemic to the section 352 analysis performed by the trial court. (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.) And, it is well settled that when ruling on the admissibility of evidence under section 352, "'a trial court need not expressly weigh prejudice against probative value, or even expressly state it has done so. All that is required is that the record demonstrate the trial court

6

understood and fulfilled its responsibilities under Evidence Code section 352. [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 213; see also *People v. Catlin* (2001) 26 Cal.4th 81, 122 [explanation of court's weighing process not required]; *People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6 [rejecting as prior decisions that required an explicit weighing of probative value and prejudice].)

Here, the same court presided over both trials. In the first trial, the prosecution moved to introduce evidence of uncharged crimes pursuant to Evidence Code sections 1101, subdivision (b) and 1108. The prosecutor's motion discussed how the court should conduct its section 352 analysis of this conduct, and in the second trial the trial court specifically stated it had reread the prosecution's motion and the record of the court and counsel's prior discussions on the topic. Furthermore, the trial court not only considered the prejudice caused by the propensity evidence, he offered Craddock the alternative of bifurcating the proceedings to keep the fact of Craddock's earlier convictions from the jury. Thus, the record is sufficient to support an inference that the trial court was aware of its obligation to balance probative value and prejudice under section 352 and performed the requisite analysis. (See *People v. Padilla* (1995) 11 Cal.4th 891, 924, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn.1.)

With respect to the court's purported failure to modify CALCRIM No. 1191, the propensity evidence instruction, it is well settled "'[a] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citations.]" (*People v. Mace* (2011) 198 Cal.App.4th 875, 882.) CALCRIM No. 1191 correctly describes the proper use of evidence the defendant committed other, uncharged, sex offenses. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1168.) Defense counsel did not request a modification of the instruction, and Craddock does not explain

7

exactly how the instruction should have been modified to avoid the double jeopardy problem he now asserts.

On the other hand, Craddock's final claim has merit. "The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15, of the California Constitution provide that a person may not be twice placed 'in jeopardy' for the 'same offense.' 'The double jeopardy bar protects against a second prosecution for the same offense following an acquittal or conviction, and also protects against multiple punishment for the same offense. [Citations.]' [Citation.]" (*People v. Anderson* (2009) 47 Cal.4th 92, 103-104.) "Double jeopardy includes an issue preclusion component: once an issue of ultimate fact has been resolved in a criminal proceeding, it cannot be relitigated in a subsequent prosecution or retrial. [Citations.]" (*Brown v. Superior Court* (2010) 187 Cal.App.4th 1511, 1524 (*Brown*).)

Craddock primarily relies on *Brown* to support his double jeopardy claim. In *Brown,* the defendant was charged with 23 counts of various sexual offenses against two minors. (*Brown*, *supra*, 187 Cal.App.4th at p. 1514.) The information alleged the crimes took place during a specific time period, but did not specify the act on which each count was based, and neither the instructions nor the verdict forms limited the counts to specific occasions. (*Ibid.*) One jury convicted the defendant of some counts, acquitted him of others, and hung as to the remainder. (*Id.* at p. 1523.) The trial court declared a mistrial on the hung counts. (*Ibid.*) The defendant objected that double jeopardy precluded retrial of the hung counts. (*Ibid.*) The trial court ruled the collateral estoppel aspect of double jeopardy precluded retrial of some but not all of the hung counts. (*Ibid.*) The defendant filed a petition for writ of mandate or prohibition in the appellate court, challenging the trial court's decision.

The appellate court explained, "Generally, a defendant bears the burden of establishing facts showing that he or she has been placed in double jeopardy by reason of a prior conviction or acquittal. [Citations.]" (*Brown, supra,* 187 Cal.App.4th at p. 1525.)

8

However, citing *People v. Smith* (2005) 132 Cal.App.4th 1537, the appellate court determined that where the prosecution uses generic pleading, and the fact that neither the instructions nor the verdict forms tied any particular count to a particular incident, the burden shifts to the prosecution when the defendant makes a "nonfrivolous showing that he faces prosecution for an offense for which he was formerly placed in jeopardy." (*Brown*, at p. 1528.)

Applying *Brown* to the case at bar, we believe Craddock satisfied his initial burden and the burden shifted to the prosecution. The operative information for both trials alleged Craddock committed five lewd acts with C.C. between 1995 and 1999 with each count alleging a specific sex act for each count. If our inquiry were limited to the language of the information, we would agree with the Attorney General that double jeopardy is not implicated by the second verdict, because the information clearly alleged count 6 as "dildo - first time" and count 7 as "dildo - last time." But neither the jury instructions, nor the verdict forms, tracked the language of the charging document. Thus, while the information specifically alleged Craddock used a dildo in the commission of counts 6 and 7, the verdict forms merely asked the jury to find Craddock guilty or not guilty of a "[v]iolation of Section 288(a) . . . as charged in . . . the information." Consequently, unless the court also provided the jury with a copy of the first amended information, something the Attorney General does not claim the court did, there is no way to tell which specific acts formed the basis for the second jury's verdict on counts 6 and 7. And there is no way to tell if the second jury relied on the same acts the first jury used as the basis for counts 2 through 5, because the same verdict forms and jury instructions were used in both trials.

Furthermore, we do not believe the Attorney General's reliance on the arguments of the counsel changes the analysis. First, the trial court instructed the jury with CALCRIM No. 200. This standard instruction tells the jury "[y]ou must decide what the facts are," and "[i]f you believe that the attorneys' comments on the law conflict

9

with my instructions, you must follow my instructions." The jury instruction for Penal Code section 288, subdivision (a) offenses (CALCRIM No. 1110) given in this case merely referred to all counts alleging Penal Code section 288, subdivision (a) violations, and did not list specific acts related to those counts. Consequently, assuming the jurors referred to the chart during deliberations based on the arguments of counsel, they would not have necessarily relied on the parties' closing arguments to clarify which specific acts were linked to counts 6 and 7.

Second, contrary to the Attorney General's assertion, the prosecutor did not relate specific instances of lewd conduct to any particular counts during his closing or rebuttal arguments at either trial. And, while defense counsel did tell the jury that count 6 was "dildo - first time" and count 7 was "dildo - last time," as noted above, the court instructed the jury that it "must follow the law as I explain it to you . . . . If you believe the attorneys' comments on the law conflict with my instructions, you must follow my instructions." And again, neither the jury instructions, nor the verdict forms linked counts 6 and 7 to the use of a dildo.

Having found Craddock made his prima facie showing under *Brown*, the inquiry then focuses on what the jury decided. "'To decipher what a jury has necessarily decided, we held that courts should "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." [Citation.]' [Citation.]" 'If there is to be an inquiry into what the jury decided, the "evidence should be confined to the points in controversy on the former trial, to the testimony given by the parties, and to the questions submitted to the jury for their consideration." [Citations.]' [Citation.]" (*Brown, supra,* 187 Cal.App.4th at p. 1524.) "'To identify what a jury necessarily determined at trial, courts should scrutinize a jury's decisions, not its failures to decide.'

[Citation.] 'The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." [Citation.]' [Citation.]" (*Ibid.*)

Here, the first jury found Craddock guilty of counts 2 through 5 in the first trial, and the first jury could not reach a verdict with respect to counts 6 and 7 which alleged the use of a dildo. Under the circumstances, we cannot fault Craddock for his failure to enter a plea of not guilty to counts 6 and 7 in the second trial due to having been placed in jeopardy by the first trial. (See Pen. Code, §§ 1016, 1017; *People v. Memro* (1995) 11 Cal.4th 786, 821.) It is equally clear the first jury made no decision on the precise issue raised here, which is whether Craddock used a dildo to commit counts 6 and 7. Thus, retrial was permissible under both the state and federal Constitutions, and if the verdict forms had contained the dildo language from the information, we do not believe Craddock would have made his prima facie case. However, under the unique facts presented here we believe Craddock satisfied his initial burden and the burden shifted, but the Attorney General has failed to prove that no double jeopardy violation occurred. (*Brown, supra,* 187 Cal.App.4th at p. 1527.)

Finally, the trial court's incomplete response to the jury's question referenced above did nothing to limit the jury's use to only two specific acts of the hundreds of lewd acts C.C. testified Craddock committed during the relevant time period. Craddock is right on this point. The trial court had an opportunity to advise the jury that counts 6 and 7 were, in fact, based on Craddock's use of a dildo with C.C. The court chose not to do so, and neither party objected. In short, while we accept the validity of the second trial, the record fails to convince us the jury relied on Craddock's alleged use of a dildo to reach its verdict on counts 6 and 7.

## DISPOSITION

The convictions on counts 2 and 3 in the second trial (counts 6 and 7 in the first trial) are reversed and the sentence on those counts vacated. The judgment is modified to reflect a determinate prison term of eight years on count 1, plus 9 consecutive

11

indeterminate terms of 15 years to life on the remaining counts. And, as requested by the Attorney General, the abstract of judgment is corrected to reflect the imposition of consecutive, indeterminate terms of 15 years to life on each of counts 2, 3, 4, 5, 8, 9, 10, 11 and 12. The clerk of the superior court is directed to correct the abstract of judgment and forward it to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.


THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

12