Filed 9/25/20  P. v. Watkins CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CURTIS DAL WATKINS,<br><br>    Defendant and Appellant. | B299454<br><br>(Los Angeles County<br>Super. Ct. No. MA073129) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

_____

H. Russell Halpern, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## MEMORANDUM OPINION[1]

A jury convicted defendant Curtis Dal Watkins of 10 counts of second degree robbery (Pen. Code,[2] § 211), four counts of attempted second degree robbery (§§ 211, 664), two counts of kidnapping to commit robbery (§ 209, subd. (b)(1)), and one count of carrying a loaded firearm (§ 25850, subd. (c)(2)). The trial court imposed an indeterminate sentence of 16 years to life for the kidnapping counts, plus a consecutive aggregate determinate sentence of 11 years 8 months in prison for the remaining counts.

Over the course of one week in November 2017, men wearing masks robbed or attempted to rob five cellular phone stores across Southern California. No victim or eyewitness was able to identify any of the perpetrators. Police linked Watkins to the robberies through circumstantial evidence, including rental car records, cellular phone records, and the activation of an Apple Watch stolen in one of the robberies. Watkins contends that this evidence was insufficient to support his convictions. We disagree and affirm.

The first two robberies occurred on consecutive nights, November 20 and 21, 2017, between 8:00 p.m. and 9:00 p.m. at Verizon stores in Mission Hills and La Crescenta. In both cases, the perpetrator wore a mask, pointed a gun at the store clerk, and demanded that the clerk put the contents of the store's safe

---

[1] We resolve this case by memorandum opinion pursuant to standard 8.1 of the California Standards of Judicial Administration, because this appeal raises only "factual issues that are determined by the substantial evidence rule." (Cal. Stds. Jud. Admin., std. 8.1(3).)

[2] Unless otherwise specified, subsequent statutory references are to the Penal Code.

into a bag.  In both robberies, the perpetrator asked the clerk about the whereabouts of the "tracker phone," an anti-theft device disguised as an iPhone box.  On both nights, the perpetrator appeared to be traveling in a white sedan.

The remaining incidents all occurred within about 90 minutes on the evening of November 27, 2017.  In the first incident, at around 8:30 p.m., two men robbed a woman at gunpoint on a street in Culver City, demanding that she give them her phone and then stealing her bag.  They then fled into a white sports utility vehicle (SUV).  Shortly thereafter, three men wearing masks entered a Verizon store a few blocks away, told everyone in the store to get down, and told the store's manager to open the safe.  One of the men was carrying a handgun.  The men took cellular phones and other devices from the store's inventory, as well as money from the store's safe.  One of the men asked the manager about the tracker phone.  The surveillance video showed a white SUV parked in front of the store at the time of the robbery.

A short time later, masked men driving a white Chevrolet SUV attempted to rob a T-Mobile store in West Los Angeles.  The store was already closed, but the men located an employee who was leaving and demanded that he open the store for them.  The employee told the men he did not have a key.  The men told him to call his manager to return to the store, but he was unable to convince his manager to do so.  The men eventually gave up and released the employee.  At around the same time, an employee was working on closing down a Verizon store less than a half mile away when she heard a thud at the front door.  She looked up and saw a masked man at the door with his hand in his pocket in a way that made her afraid he might have a gun.  When he saw

her, he quickly walked away. Surveillance footage showed a white SUV driving away just after this incident.

Records from an Enterprise Rent-A-Car location in Lancaster, near Watkins's home, indicated that Watkins rented a white Toyota Camry from November 20 to November 22, 2017, and that he rented a white Chevrolet Equinox SUV from November 27 to November 29. Cellular phone records showed that on the evening of each of the robberies, a phone registered to Watkins traveled from somewhere near Watkins's home in Lancaster to the area where the robberies took place, and then returned north toward Watkins's home after the robberies were finished. In the case of the Mission Hills robbery on November 20, the phone was used to make two calls between 7:07 p.m. and 7:11 p.m., approximately an hour before the robbery, while connected to a cellular tower less than one tenth of a mile away from the site of the robbery. The following night, the phone made three calls at around the time of the La Crescenta robbery while connected to a tower less than one quarter mile away. On the evening of November 27, the phone accessed cellular towers less than a mile away from the Culver City robbery at around the time that robbery took place. A police detective analyzed the records pertaining to the phone for the months leading up to the robberies. The records indicated that when the phone was in use, it was most often connected to the cellular towers closest to Watkins's home. Nothing about the phone usage patterns indicated that someone else was using Watkins's phone on the days of the robberies.

On November 28, 2017, the day after the Culver City robbery, an Apple Watch that had been stolen from the store was registered in Watkins's name, including his home address and email address.

On February 1, 2018, police searched Watkins's home and car. They found a loaded .40 caliber Glock handgun in his car. Police did not recover the phone and watch that had been registered to Watkins.

Watkins contends that the evidence was insufficient to show that he was involved in the robberies. In reviewing sufficiency of the evidence, we do not reweigh the evidence. (*People v. Collom* (2020) 52 Cal.App.5th 35, 41 (*Collom*).) Instead, we ask " 'whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. . . . [W]e must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) "Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for ' "substantial evidence—that is, evidence which is reasonable, credible, and of solid value" ' that would support a finding beyond a reasonable doubt. (*People v. Boyce* (2014) 59 Cal.4th 672, 691 . . . .)" (*People v. Banks* (2015) 61 Cal.4th 788, 804.)

Watkins argues that the evidence showed at most that he owned the mobile phone in question, not that it was in his possession during the robberies. He analogizes his case to those involving the possession of narcotics. In particular, he cites *People v. Antista* (1954) 129 Cal.App.2d 47, 50 (*Antista*), in which the court held that the presence of an illegal substance in the defendant's home is insufficient to prove that the defendant possessed it. There must be some additional evidence to "indicate[ ] knowledge of the defendant of its presence and his control of it." (*Ibid.*)

5

We are skeptical that this case is sufficiently analogous to support Watkins's position. In *Antista*, the defendant testified that he never smoked due to a medical condition, and that he left a key under a mat to allow friends to visit while he was away. (*Antista*, *supra*, 129 Cal.App.2d at p. 48.) The court held that under these circumstances, there was insufficient evidence to find beyond a reasonable doubt that the defendant, rather than a visitor, possessed marijuana found hidden in a cupboard. (*Id.* at pp. 52–53.) In this case, by contrast, there was nothing to suggest that Watkins's cellular phone was in anyone else's possession during the relevant periods. Instead, a detective who had examined Watkins's phone records found nothing in them to indicate that the phone had been stolen or that someone other than Watkins was using it on the days of the robberies.[3]

Furthermore, additional evidence corroborated the cellular phone data and demonstrated Watkins's involvement in the robberies. The Enterprise records showed that Watkins rented vehicles matching the descriptions of those seen at the robberies over the same dates when the robberies took place. In addition, Watkins registered an Apple Watch the day after it was stolen

---

[3] Watkins also cites cases holding that when a vehicle is involved in an accident, its registered owner is obligated to identify himself to the driver of the other car or to a police officer, but only if the owner is present in the car. (*People v. Monismith* (1969) 1 Cal.App.3d 762, 766; *People v. Mace* (2011) 198 Cal.App.4th 875, 886.) We fail to understand the relevance of these cases. The question is not whether Watkins would be responsible for the actions of someone else who was carrying his phone. Instead, the question is whether the records showing the location of Watkins's phone can be used to prove Watkins's involvement in the robberies.

during one of the robberies.  Finally, police discovered a handgun in Watkins's car that matched several witnesses' descriptions of a gun used in the robberies.

All the evidence in this case was circumstantial, but it is hornbook law that circumstantial evidence alone may be sufficient to support a defendant's conviction.  (See, e.g., *People v. Goldstein* (1956) 139 Cal.App.2d 146, 151; CALJIC No. 2.00.) The evidence in this case was sufficient to allow " 'a reasonable trier of fact [to] find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*Collom*, *supra*, 52 Cal.App.5th at p. 41.) For this reason, we must affirm Watkins's conviction.

## DISPOSITION

The judgment of the trial court is affirmed.

NOT TO BE PUBLISHED

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

SINANIAN, J.*

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.